186 So.2d 889 (1966)
Mrs. Antoine MICHEL
v.
Phillias GUILLOT et al.
No. 6650.
Court of Appeal of Louisiana, First Circuit.
May 9, 1966.
Rehearing Denied June 14, 1966.
*891 Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, A. G. Seale, of Seale, Hayes, Smith & Baine, Baton Rouge, Felix H. Savoie, Jr., of Simmons & Savoie, Napoleonville, for appellants.
Sam J. D'Amico, of D'Amico & Curet, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LOTTINGER, Judge.
This is a suit for damages brought by petitioner, Mrs. Antoine Michel, against Phillias Guillot, The American Insurance Company, Reynold Wicker, Boh Bros. Construction Co., Inc. and The Travelers Insurance Company.
Phillias Guillot was the owner of a Chevrolet automobile operated as a taxicab which was being driven by Antoine Michel, when it became involved in a collision at the intersection of Claiborne Avenue and Earhart Boulevard in the city of New Orleans, Louisiana, with a tractor-trailer driven by Reynold Wicker. At the time of the accident, which occurred on July 16, 1962, Phillias Guillot was occupying the front right seat of his automobile being driven by Antoine Michel.
The automobile owned by Phillias Guillot was covered by a liability insurance policy written by The American Insurance Company.
Reynold Wicker, the driver of the tractor-trailer, was an employee of Boh Bros. Construction Co., Inc., and said company owned the tractor-trailer involved in the accident. Boh Bros. Construction Co., Inc. had a liability insurance policy on its tractor-trailer issued by The Travelers Insurance Company.
At the scene of the accident, South Claiborne Avenue runs from uptown toward downtown New Orleans. Earhart Boulevard is a four lane thoroughfare running from the river to the lake, and is divided by a neutral ground measuring 15 to 20 feet in which, separating the double lanes of traffic, each lane measures about 40 feet in width. South Claiborne Avenue has a width of approximately 35 feet. The posted speed limit on both streets is 35 miles per hour. There is a stop sign located on the uptown side of Claiborne Avenue for traffic approaching Earhart Boulevard on Claiborne Avenue from uptown, and Earhart Boulevard is the favored thoroughfare.
The record discloses that, as Antoine Michel approached Earhart Boulevard on Claiborne Avenue, he stopped at the center lane, opposite the stop sign, and then proceeded to cross the boulevard at a speed of about 15 miles per hour. At the same time, Reynold Wicker was approaching Claiborne Avenue in the outside lane of the two lanes for lake-bound traffic on Earhart Boulevard, at a speed of about 30 miles per hour. He was familiar with the intersection and knew of the existence of the stop sign on Claiborne Avenue. As the taxicab proceeded across the intersection, it was struck almost broadside by the Mack tractor. The principle point of impact, by the bumper of the tractor-trailer, was at about the front door on the right-hand side of the Chevrolet. The vehicles came to rest about 25 to 30 feet from the point of impact, in the outer lane of Earhart Boulevard, about 3 or 4 feet from the curbing.
*892 Reynold Wicker was alone in his vehicle. Seated to the right of Michel, in the taxicab, on the front seat, was a small child, his wife, Mrs. Antoine Michel, and Phillias Guillot. In the rear was seated Mrs. Dalton Bernucheaux, her small child, and Charles J. Dupre.
Mrs. Antoine Michel received severe injuries as a result of the collision, and filed this suit for damages against Phillias Guillot, The American Insurance Company, Reynold Wicker, Boh Bros. Construction Co., Inc. and The Travelers Insurance Company. She alleges that the drivers of both vehicles were guilty of concurrent negligence and are liable to her, in solido, as joint tort feasors.
The American Insurance Company, the liability insurer of the taxicab, denied coverage under its policy and refused to defend this suit. Phillias Guillot, therefore, employed his own counsel and brought the American Insurance Company into the suit as a third party defendant. In this three party action, Guillot asked for judgment against his insurer in the full amount of any judgment rendered against him, without regard to policy limits. He further asked for reasonable attorney fees.
The Lower Court held both drivers concurrently negligent and rendered judgment in favor of petitioner and against the defendants in the full sum of $15,000.00, limiting the award against The American Insurance Company to its policy limits of $10,000.00, plus 12% penalty. The Lower Court also awarded judgment in favor of Phillias Guillot and against American Insurance Company in the sum of $1500.00 as attorney fees. Appeals were taken by Boh Bros. Construction Co., Inc., Reynold Wicker, The Travelers Insurance Company, and The American Insurance Company, all of whom are defendants herein, as well as Phillias Guillot. No appeal, nor answer thereto, was filed by petitioner. In an exhaustive and well written opinion, the Lower Court held both drivers guilty of concurrent negligence. There is no question in our mind but that Mr. Michel, who was then driving the taxicab, was negligent as he approached Earhart Boulevard. According to a Mr. Spain, a disinterested witness to the accident, Mr. Michel drove alongside the Spain automobile which was stopped in the outer downtown traffic lane of Claiborne Avenue awaiting traffic to clear on Earhart Boulevard. He testified that Mr. Michel momentarily stopped beside him in the inner downtown lane, and then proceeded to cross Earhart Boulevard. Mr. Spain saw the tractor-trailer at this time some 200 to 300 feet from the intersection. He also observed a Chrysler automobile traveling rapidly along the tractor-trailer, which automobile cleared the intersection well ahead of the taxicab. The Lower Court correctly held Michel negligent in his failure to observe the approaching traffic, as well as his failure to accord such traffic its superior right of way.
With regard to the negligence of Reynold Wicker, he testified that he did not see the taxicab until he collided with it. He did not apply his brakes until after the impact. Prior to the collision, Michel traveled approximately 80 feet from his stopped position opposite the stop sign on Claiborne Avenue to the point of collision. His speed was estimated at 15 miles per hour. Wicker, on the other hand, testified that he was traveling about 30 miles per hour. Thus, while the taxicab traveled a distance of approximately 80 feet, the tractor-trailer going twice as fast would have covered 160 feet. There are no obstructions to view of any kind at the intersection and, as Mr. Spain was able to observe the tractor-trailer at a distance from some 200 to 300 feet from the intersection, Reynold Wicker should have been able to observe the approaching taxicab. The Lower Court, therefore, held that Wicker was not keeping a proper lookout and, based upon the holding in Scheib v. Ledet, La.App., 57 So.2d 814, 816, held that Wicker should have seen what he could have seen had he looked, and that his *893 failure to see the oncoming vehicale constituted negligence.
In the Scheib case, the Court said:
"Ledet did not say a word about his having been on the lookout for vehicles coming across the neutral ground. The duty of a motorist to look ahead never ceases, and Ledet having failed to exercise the vigilance required of one operating an automobile was guilty of negligence. While it may be true that he did have the right of way, under the circumstances, had he been paying but slight attention to his driving, he certainly would have noticed the truck and known, because of its speed, that its driver did not intend to stop on the neutral ground. The right of way did not relieve Ledet of the necessity of exercising caution, and had he taken the trouble to look he would have seen the truck and could have taken such steps as were available to him for avoiding a collision. See Tarleton-Gaspard v. Malochee, 16 La.App. 527, 133 So. 409."
In its holding, the Lower Court found the failure of Wicker to see the taxicab "exceptional circumstances", as held in Williams v. State Farm Mutual Insurance Company, La.App., 148 So.2d 126, in which the Court said that "* * * it is only in exceptional circumstances where the motorists on the favored street could have avoided the accident by the exercise of the slightest sort of observation, that he will be found derelict." The facts disclose that had Wicker noticed the oncoming taxicab prior to the collision, he could have turned or applied his brakes and thus avoided the accident.
The testimony discloses that the passengers in the taxicab, including Antoine Michel, and his wife, had hired Phillias Guillot to transport them from Pierre Part, Louisiana, to Charity Hospital in New Orleans. When they left Pierre Part, Guillot was driving the taxicab. Upon reaching Thibodaux, Louisiana, Guillot asked Antoine Michel to drive the taxicab. Although there was nothing said about payment for Michel driving, on prior occasions Guillot had reduced the fare whenever Michel helped with the driving. The Lower Court therefore held that Michel was an employee, or agent, of Guillot at the time of the accident and further held that the policy of liability insurance issued by American Insurance Company to Guillot covered the accident in question.
American Insurance Company, on the other hand, contends that there was no contractual liability for the imputed negligence of Phillias Guillot because of an exclusion contained in the policy which provides as follows:
"PRIVATE LIVERY
It is agreed that: such insurance as is afforded by the policy for bodily injury liability, for property damage liability and for basic medical payments with respect to the automobile described below or designated in the policy as subject to this endorsement applies, subject to the following provisions:
1. The insurance applies only while the automobile is rented from the residence of the named insured or from a garage, with the named insured or an employee of the named insured in attendance as Chauffeur, or is used for personal, pleasure, family or other business purposes."
The pertinent portion of the above quoted exclusion is the wording "* * * with the named insured or an employee of the named insured in attendance as Chauffeur * * * ". The Lower Court held that the exclusion in the policy did not apply to our situation, under the holding of the Court in Sherman v. O'Sullivan, La.App., 164 So. 343, in which the Court said:
"A determination of the merits of the case depends upon the interpretation given to the word `employee,' as used in the said contract of insurance. The defense is highly technical. The policy was not *894 issued due to any special qualifications possessed by Mr. Engel as a driver. The word `employee,' as used in the policy, is used synonymously with `agent,' and the purpose of the clause is to prevent the insurer from becoming liable for an accident caused by a driver using the car without the consent and out of the presence of Mr. Engel. If Mr. Engel had loaned the car to a third person and an accident had occurred, the insurer would not have been liable, but if he had employed a chauffeur to drive for him, it would have been liable. The fact that he secured a chauffeur, without pay, can make no difference. His companion was acting as chauffeur, at his request, and he was present in the car on the same seat with her. It is suggested in defendant's brief that the reason Mrs. O'Sullivan drove the car was because Mr. Engel, a New York man, was under the impression that he would be violating the laws of Louisiana if he drove without a driver's license. A very strict interpretation of the word `employee' might possibly be a bar to plaintiff's recovery, but when we consider an employee as an agent (which is the correct meaning of the word), we find that Mrs. O'Sullivan was Mr. Engel's agent at the time and was driving with his consent, at his request and subject to his orders. The car was under the control of Mr. Engel as much as if a paid chauffeur had been driving. The mere fact that Mrs. O'Sullivan was driving without an agreement to be paid, could not bar the right of plaintiff to recover from the insurance company or the right of Engel to recover against the insurer."
We certainly feel that the decision of the Lower Court in this regard was correct and that accordingly the exclusion in the Guillot policy is not applicable to this case. In its decision, the Lower Court awarded judgment in favor of Mrs. Michel and cast the American Insurance Company for 12% penalty under the provisions of R.S. 22:658. The penalty as provided in said Article is payable to the insured, and Mrs. Michel was not insured by the American Insurance Company. We therefore feel that the Lower Court was incorrect in allowing penalties to Mrs. Michel, and the judgment of the Lower Court will be amended accordingly.
The Lower Court, on the other hand, correctly held that the American Insurance Company was liable for the attorney fees of its insured, Phillias Guillot. We believe that said attorney fees should now be increased from the sum of $1500.00 to $2500.00, because of the additional burden placed upon Mr. Guillot by virtue of this appeal.
With regard to quantum, the record discloses that Mrs. Michel suffered a brain concussion with cerebral contusion. She had bi-lateral fractures of the superior rami of the pubis and the inferior ramus on the left. She suffered papilledema of the eye, a swelling of the nerve heads, which resulted in double vision which could continue for the remainder of her life. She incurred lacerations of her legs and the side of her face. Two sutures were applied to the lacerations of her lower right leg, and it was necessary to suture the lacerations of her right eye, the bridge of her nose and chin. She also suffered abrasions and contusions over the remainder of her body, causing the appearance of blood and pus in her urine. No narcotics were prescribed because of the head injury. After the accident, she was taken to Charity Hospital where she remained five days. She was then transferred to the hospital at Pierre Part where she remained ten days, and then again to Charity Hospital where she remained an additional six days.
At the time of the trial, she was still complaining of double vision, headaches and inability to perform her household duties, and her still visible scars about her face and right leg.
*895 Mrs. Michel is 41 years of age and maintains a household for her husband and five children. We feel that the award of $15,000.00 is justified and there will be a judgment accordingly.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended to exclude therefrom the 12% penalty awarded petitioner against American Insurance Company, and to increase the attorney fees awarded Phillias Guillot against the American Insurance Company to the sum of $2500.00, and, as amended, the said judgment is affirmed. The costs of this appeal shall be divided between Reynold Wicker, Boh Bros. Construction Co., Inc. and The Travelers Insurance Company on one hand, and Phillias Guillot and the American Insurance Company on the other hand.
Judgment amended and affirmed.