373 So.2d 763 (1979)
Ira MAY, Plaintiff-Appellee,
v.
MARKET INS. CO. et al., Defendants-Appellants.
No. 7057.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
Rehearings Denied August 15, 1979.
Writ Granted October 19, 1979.
*764 Allen, Gooch & Bourgeois, Arthur I. Robison, Lafayette, for defendants-appellants.
Fruge & Vidrine, Jack C. Fruge, Ville Platte, for plaintiff-appellee.
Reggie, Harrington & Boswell, Oscar Boswell, II, Crowley, for intervenor-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
Plaintiff, Ira May, brought suit against Market Insurance Company (Market), Lloyds of London (Lloyds) and Interstate Surplus Underwriters, Inc. (Underwriters) for the sum of $249,000.00 plus penalties and attorney's fees, representing the policy limits of three insurance policies allegedly issued by defendants, which covered The Wagon Wheel Inn against loss by fire.[1] Louisiana Bank and Trust Company (Louisiana Bank), as holder of two promissory notes secured by collateral mortgages on the building and as loss payee under the insurance policies, intervened in the action seeking to have its rights to the insurance proceeds recognized as superior to those of plaintiff, and seeking also to recover penalties and attorney's fees from the insurers for their failure to make timely tender of the proceeds pursuant to LSA-R.S. 22:658.[2] *765 The facts giving rise to this action are summarized as follows: On January 24, 1977 the Wagon Wheel Inn which was owned and operated by Ira May as a restaurant and lounge, was completely destroyed by fire. At the time of the fire, the building was covered by three fire insurance policies allegedly issued by defendants, respectively providing the following coverage on the building: $125,000.00 (Market policy); $75,000.00, with a $500.00 deductible (Interstate Policy); and, $50,000.00, with a $500.00 deductible (Lloyds policy), totalling a principle sum of $250,000.00 less $1,000.00 deductible. On March 2, 1977, Ira May filed claims against the insurers seeking payment of the full amount of each policy. Subsequent to the filing of plaintiff's claims, defendants were served with interrogatories as part of a garnishment proceeding which had been instituted by Ronald Landreneau against Ira May. Following service of these interrogatories, defendants processed plaintiff's claims and issued three drafts dated April 26, 1977 totalling $163,314.00, a sum which represented what defendants contended to be the cost of rebuilding the Wagon Wheel Inn. The three drafts were made payable to Ira May, Ira May's attorney,[3] Louisiana Bank and Ronald Landreneau. More than sixty days after the filing and receipt of a proof of loss by each of the three companies and on May 6, 1977 plaintiff instituted suit against the insurers, alleging that defendants improperly placed Ronald Landreneau's name on the drafts; that doing so rendered the drafts non-negotiable and did not amount to a valid tender; that May was entitled to the full amount payable under each policy; and, that defendants' failure to make timely and proper payment was arbitrary, capricious and without probable cause. Interstate filed a motion for summary judgment, alleging that it was not an insurer under any of the policies of insurance, but was rather only the underwriting agency or placing broker therefor, which motion was denied.
On March 20, 1978, Lloyds deposited $132,403.44, which represented the total face amount of the Lloyds and Interstate policies plus interest to date of deposit, into the registry of the court, all of which was withdrawn on joint motion of Mr. May and Louisiana Bank, and applied to the indebtedness of Mr. May to Louisiana Bank. In May, 1978, Louisiana Bank and Mr. May entered into a stipulation to the effect that crediting the amount Louisiana Bank had received from the aforementioned payment, and the amount Louisiana Bank had received from a foreclosure on other property of Mr. May in another action, the amount due Louisiana Bank by Mr. May was $63,210.96, with interest at the rate of 10% per annum from March 22, 1978, on $40,465.41 of that sum, and interest at the rate of 8% per annum from March 22, 1978, on the remaining $22,745.55.
Following trial on the merits, the court rendered judgment in favor of plaintiff and intervenor and against defendants, which judgment reads in pertinent part as follows:
"IT IS ORDERED ADJUDGED, AND DECREED that:

1. There be judgment rendered herein in favor of IRA MAY and against MARKET INSURANCE COMPANY in the sum of ONE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($125,000.00) DOLLARS, plus FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS penalties (12%), plus attorney *766 fees in the amount of TWENTY-FIVE THOUSAND AND NO/100 ($25,000.00) DOLLARS, with legal interest on all amounts from date of judicial demand at the rate of seven (7%) per cent per annum until paid.

2. There be judgment rendered herein in favor of IRA MAY and against INTERSTATE SURPLUS UNDERWRITERS, INC. in the sum of SEVENTY-FOUR THOUSAND FIVE HUNDRED AND NO/100 ($74,500.00) DOLLARS, plus EIGHT THOUSAND NINE HUNDRED FORTY AND NO/100 ($8,940.00) DOLLARS penalties (12%), plus attorney fees in the sum of FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS, together with legal interest on all amounts from date of judicial demand at the rate of seven (7%) per cent per annum until paid.
3. There be judgment rendered herein in favor of IRA MAY and against LLOYDS OF LONDON in the full sum of FORTY-NINE THOUSAND FIVE HUNDRED AND NO/100 ($49,500.00) DOLLARS, plus FIVE THOUSAND NINE HUNDRED FORTY AND NO/100 ($5,940.00) DOLLARS penalties (12%), plus TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS attorney fees, together with legal interest on all amounts from date of judicial demand until paid at the rate of seven (7%) per cent per annum until paid.
4. INTERSTATE SURPLUS UNDERWRITERS, INC. and LLOYDS OF LONDON are entitled to a credit of ONE HUNDRED THIRTY-TWO THOUSAND, FOUR HUNDRED THIRTY THREE AND 44/100 ($132,433.44) DOLLARS, the sum deposited by said defendants in the Registry of the Court on March 20, 1978.

5. There be judgment rendered herein in favor of intervenor LOUISIANA (sic) and TRUST COMPANY, and against MARKET INSURANCE COMPANY in the sum of THREE THOUSAND SEVEN HUNDRED FIFTY AND NO/100 ($3,750.00) DOLLARS; against INTERSTATE SURPLUS UNDERWRITERS, INC. in the sum of TWO THOUSAND TWO HUNDRED AND FIFTY AND NO/100 ($2,250.00) DOLLARS; and against LLOYDS OF LONDON (Interstate Surplus Underwriters, Inc.) in the sum of FIFTEEN HUNDRED AND NO/100 ($1,500.00) DOLLARS as attorney fees, together with legal interest thereon at the rate of seven (7%) per cent per annum from date of judicial demand until paid. ..."
Defendants perfected this appeal urging several specifications of error. Ira May answered the appeal, seeking an increase in attorney's fees as well as damages for frivolous appeal. Louisiana Bank also answered, seeking a reversal of the lower court's denial of penalties to that party and an increase in its award for attorney's fees. The numerous issues raised by the parties on appeal will be separately considered.
I. WERE DEFENDANTS ARBITRARY AND CAPRICIOUS IN FAILING TO MAKE PAYMENT FOR THE FULL AMOUNT OF IRA MAY'S LOSS CLAIM?
Under LSA-R.S. 22:658, an insurer is given sixty days following receipt of satisfactory proof of loss in order to make payment to the insured to cover his loss. When the insurer fails to do so and such failure is found to be arbitrary, capricious or without probable cause, the insurer is liable for the claim as well as for penalties and attorney's fees. Appellees assert that appellants were arbitrary and capricious in failing to make payment for the full amount of Ira May's claim, $249,000.00. Appellants urge that they assessed May's claim at $163,314.00 on the basis of reliable information which set the estimated cost of rebuilding the Wagon Wheel Inn at such amount. The trial court determined that defendants' failure to pay the full amount of May's claim was arbitrary and capricious, and assessed penalties against defendants based upon the full amount of the claim.
The record reflects that in 1975, Eugene Bouillion, a professional appraiser, provided Louisiana Bank with a courtesy appraisal of the Wagon Wheel Inn based upon information *767 supplied to him by Howard Duncan, a general contractor in Crowley. Mr. Bouillion testified that the appraisal was made for loan purposes only. He stated that it was not intended to represent an estimate of what it would cost to replace the building, but rather it was intended to represent its value as security. Mr. Bouillion's 1975 appraisal of $163,314.00 was admitted by defendants to have been the source of their estimate of the replacement cost of the building.
Even if we assume arguendo that the appraisal was originally intended to represent an estimate of what it would cost to replace the building, the appraisal was nevertheless made in excess of a year before Mr. May's property was destroyed. Mr. Bouillion himself testified that building costs had increased substantially between 1975 and 1977, and that based upon a per square foot cost calculation, it would have been impossible to replace the building in 1977 at a cost equal to his 1975 appraisal. Building contractors called to testify by appellees to estimate the cost of replacing the building following the fire all set the figure well above $249,000.00. The trial court determined that defendants made no effort whatever to ascertain the actual replacement cost of the building following the fire, and we find the trial court's conclusion to be amply supported by the record. We therefore find that defendants were arbitrary and capricious in failing to pay the full amount of Ira May's loss claim.
II. DID APPELLANTS TENDER PARTIAL PAYMENT OF IRA MAY'S CLAIM?
Under LSA-R.S. 22:658, if the insurer fails to make any payment to the insured within the sixty day period, penalties are assessed on the basis of the full amount of the insured's claim. When partial payment is made by the insurer, but it is found that the insurer's failure to tender payment to the full extent of the claim was arbitrary and capricious, then the penalties are computed on the basis of the difference between the amount paid and the amount which should have been paid. Appellants urge that they did make partial payment to appellees when they issued the three drafts, and that if this court determines that they were arbitrary and capricious in failing to remit the full amount of May's claim, then the trial court nevertheless erred in computing penalties against them on the basis of the entire claim rather than on the difference between the amount claimed and the amount allegedly tendered. Appellees urge that there was no tender of payment effected by the issuance of these drafts as defendants placed the name of Ronald Landreneau on each of them, and that because Landreneau refused to endorse the drafts, they could not be cashed and applied to May's claim. Defendants contend that the addition of Landreneau's name on the drafts was necessary because after May filed his claim against defendants, they were served with a petition of garnishment and interrogatories on behalf of Landreneau, who was seeking to execute upon a money judgment he had previously obtained against May. Defendants urge that from the moment of service of the petition of garnishment, they were bound to protect Landreneau's claim, while at the same time having to make payment to their insured within the statutory period. Landreneau would not endorse the drafts unless his judgment was satisfied from the insurance proceeds,[4] while Louisiana Bank refused to pay his claim, asserting that their claim as mortgagee primed his money judgment. In its written reasons for judgment, the trial court stated:
"... There is no excuse whatsoever for defendants to have placed the name of Ronald Landreneau on the drafts sent to Mr. Fruge, the attorney for the plaintiff, as no judgment of garnishment had ever been rendered against Mr. Landreneau (sic) in the matter entitled `Ronald Landreneau versus Ira Mae, (sic) C.D. No. 30,760, 13th Judicial District Court' at the *768 time the drafts were issued by defendants. The Court holds that including the name of Ronald Landreneau on said drafts prevented the plaintiff and intervenor from applying those funds to their claims, and therefore, was not a legal tender under the laws and jurisprudence of Louisiana."

While we disagree with the trial court that the lack of a judgment of garnishment is determinative of this issue, we nevertheless conclude that the issuance of the drafts bearing Landreneau's name did not constitute legal tender within the contemplation of LSA-R.S. 22:658.
In Black's Law Dictionary (Fourth Edition), the term "tender" is defined as follows:

"An offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition ..." (Emphasis added)

Clearly, the issuance of three drafts which could not be cashed until Ronald Landreneau's alleged claim against Ira May was settled did not constitute an unconditional payment on defendants' parts. Appellants argue that they had to place his name on the drafts in order to protect his claim to the insurance proceeds. We disagree. In 18 Louisiana Law Review 446, 479-80 the garnishee's duties are analyzed as follows: ********** 
"The garnishee occupies the position of a stakeholder whose only responsibilities are to answer truthfully the interrogatories, to support his answers should they be traversed, and to pay or deliver the property and credits in his hands to whomever the Court may order. As a stakeholder, the garnishee must stand aloof from the claims which all other parties have to the property and credits in his hands. He may not inquire into the merits of the controversy between plaintiff and defendant and cannot oppose the garnishment proceedings brought against him by showing that plaintiff's claim against defendant is invalid, or that defendant has a defense which defeats the claim. Similarly, the garnishee may not champion the rights of the creditors of defendant, nor the rights of another garnishee, nor those of an intervenor in the garnishment proceeding. The only legitimate concern of the garnishee is to protect his own interests." (Emphasis Added; Citations omitted)

We agree with appellant's contention that under LSA-C.C.P. Article 2411[5] the seizure of property belonging to the judgment debtor in the garnishee's possession takes effect upon service of the petition, citation and interrogatories without the need of a judgment. However this seizure is merely a constructive one, intended to immobilize the property until it can be distributed by court order. LSA-C.C.P. Article 2415 provides:
"When the garnishee admits in his answer, or when on trial of a contradictory motion under Article 2413 or Article 2414 it is found that he has in his possession property belonging to the judgment debtor or is indebted to him, the court shall order the garnishee to deliver the property immediately to the sheriff or to pay him the indebtedness when due. Delivery or payment to the sheriff discharges the garnishee's obligation to the judgment debtor to the extent of the delivery or payment.

This article does not apply to garnishment of wages, salaries, or commissions." *769 We find appellants' contention that failure to place Landreneau's name on the drafts would have exposed them to multiple liability to be unfounded. In the case of First State Bank v. Burton, 222 La. 1030, 64 So.2d 421 (La.1953) our Supreme Court considered the question of a garnishee facing the possibility of multiple liability to its debtor as well as to the judgment creditor, and therein stated:
"Our courts strive to protect garnishees against double liability as a consequence of garnishment proceedings, 5 American Jurisprudence, verbo Attachment and Garnishment, Section 781, Isaac v. Comision Reguladora Del Mercado De Henequen. 204 La. 1, 14 So.2d 865, and, in this connection, have sanctioned at least two courses available to them. Thus, the garnishee herein, on being served with notice of the garnishment, might have convoked a concursus, depositing the money in the registry of the court and citing all interested parties, just as was done in Willey v. St. Charles Hotel Company, 52 La.Ann. 1581, 28 So. 182. Or it could resist the garnishment, as it is doing, on the theory that there are parties other than the defendant entitled to the funds, in which case the plaintiff is required to bring them into the proceeding for the purpose of having their rights determined." 64 So.2d at pg. 423

Appellants, as garnishees, merely occupied the positions of third parties who were required to answer certain questions propounded to them relative to property belonging to Ira May of which they had possession, and to strictly comply with the orders of the court regarding such property. Goodwin v. Southern Kraft Corporation, 6 So.2d 783 (La.App. 2d Cir. 1942); Manual Motor Co. v. Graham, 69 So.2d 64 (La.App. 1st Cir. 1953). It was not incumbent upon them under our garnishment laws to issue three drafts totalling an amount in excess of $160,000.00 in satisfaction of their debt to Ira May, payable directly to Landreneau, whose debt was approximated to be between $5,000.00 and $6,000.00. We conclude that the issuance of the three drafts did not constitute a valid tender under LSA-R.S. 22:658, and was not action mandated by our laws governing garnishment proceedings. We therefore find that the trial court properly assessed penalties against appellants based upon the total amount of appellee's claim of $249,000.00.
III. IS LOUISIANA BANK ENTITLED TO ATTORNEY'S FEES AND PENALTIES UNDER LSA-R.S. 22:658?
LSA-R.S. 22:658 in part provides:

"Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss ..." (Emphasis added)
Applying this portion of the statute, the trial court awarded attorney's fees to intervener Louisiana Bank in the sum of $7,500.00, and rejected its demand for penalties. Appellants urge that as Louisiana Bank was not the insured under the policies sued upon, it was not entitled to attorney's fees under this statute. Louisiana Bank contends that its right to the insurance proceeds is distinct and separable from that of the insured, Ira May, and that as loss payee under the insurance policies, it is entitled to attorney's fees and penalties along with the insured. On appeal, Louisiana Bank seeks an increase in its award for attorney's fees and a reversal of the trial court's rejection of its demand for penalties. We find that under the express terms of LSA-R.S. 22:658, neither attorney's fees nor penalties were properly awardable to Louisiana Bank, and therefore we reverse the judgment of the trial court insofar as it allows recovery of attorney's fees against defendants in favor of Louisiana Bank and affirm the lower court's rejection of that party's claim for penalties.
In support of its position, Louisiana Bank cites the case of Capital Building and Loan *770 Association v. Northern Insurance Co., 166 La. 179, 116 So. 843 (La.1928), in which our Supreme Court determined that the mortgagee, as loss payee under the policy of insurance sued upon, was entitled to "... all of the rights which the insured would have been entitled to, with respect to the penalty and attorney fees. . ." 116 So. 843 at 846. It should be noted at the outset, however, that at the time of this decision, the applicable statutory authority for the imposition of attorney's fees and penalties against an insurer for arbitrarily withholding payment from its insured was Act 168 of 1908, which in pertinent part provided:
"... should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent damages on the total amount of the loss as may be determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss ..." (Emphasis added)
The present statutory provision, LSA-R.S. 22:658, expressly makes the penalties and attorney's fees payable to the "insured". We likewise note that in a later consideration of this same question our Supreme Court, without citing Capital Building and Loan Association, supra, apparently rejected the reasoning therein by denying the mortgagee-intervenor's claim for statutory penalties under Act 59 of 1921.[6] See Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407 (La.1931). In Hardy, the defendant insurance company had issued a policy on plaintiff's automobile insuring it against loss by fire. Plaintiff filed a loss claim on this policy, which claim was rejected by defendant. The insured thereafter instituted suit against defendant for the amount of his claim as well as for penalties and attorney's fees. Commercial Credit Company intervened in the action, insofar as the policy sued upon contained a loss payable clause making the proceeds thereof payable to it as holder of a chattel mortgage on the insured's automobile. Intervenor asserted its interest to the insurance proceeds to the extent of its rights against the insured, namely for the principal sum of his outstanding debt, along with 25% attorney's fees, as provided in the mortgage contract, and likewise sought statutory penalties against the insurer for its alleged failure to make timely payment of the proceeds to its mortgagor and to it as loss payee under the policy. The trial court found that the intervenor had a contractual right to the insurance proceeds to the extent of its agreement with the insured, as well as an independent right against the insurer for statutory penalties. On review, our Supreme Court reversed in part and stated:
"The district judge, in a written opinion said:
`The intervener had a right to collect out of this policy the amount of its debt and the attorneys' fees as a contractual obligation, and the attorneys' fees are just as much a part of the debt as is the interest itself and secured by the mortgage just the same as the principal of the debt and interest.'
We think the ruling is correct.
The intervener claimed also that it was entitled to a pro rata division of the penalties assessed against the insurance company under Act 59 of Acts Extra Sess., 1921. The trial judge in his written opinion said:
`For all practical purposes he (the intervener (sic)) is an assured just the same, up to the extent of his interest, as the owner of the property. * * * On this score we think that the proper method would be to prorate the twenty-five per cent penalty between the plaintiff and the intervener (sic) in proportion to their recovery.'
*771 We do not sanction this holding. The penalties were due the assured. The policy was held by the intervener (sic) as a mortgage creditor of plaintiff under a stipulation that in case of loss the proceeds should be paid to it as its interest might appear. The extent of its interest was the amount of its debt with interest and attorneys' fees. Beyond that it had no claim on the policy or its proceeds. The fact that it held the policy under such conditions did not make it an assured. It had an interest in the policy but was not the owner of the property covered by the insurance." 134 So. at pg. 409
Insofar as we are herein concerned solely with Louisiana Bank's claim against defendants, we find the above reasoning applicable. We construe the import of this decision as distinguishing the mortgagee's contractual right to interest and attorney's fees as against its mortgagor from any statutory right it may claim to penalties and attorney's fees against the insurer, and as clearly rejecting the latter.
We find our conclusion to refuse recovery of penalties and attorney's fees to Louisiana Bank under LSA-R.S. 22:658 to be further supported by the case of Aswell v. United States Fidelity and Guaranty Co., 264 So.2d 656 (La.App. 3rd Cir. 1972), wherein this court was called upon to determine the proper parties to whom attorney's fees and penalties were available under LSA-R.S. 22:658. The plaintiff in this case was a physician filing to recover for medical services performed and for drugs furnished to the insured, as well as for penalties and attorney's fees against the insurer under the above quoted statute. Although the trial court awarded plaintiff penalties and attorney's fees, finding that he was a proper party at interest in enforcing the policy, on appeal this court considered the legislative history of LSA-R.S. 22:658 as well as the applicable jurisprudence to conclude that the "insured's" right to recover penalties and attorney's fees under the statute is a right strictly enforceable by the insured or his employees alone. Therein we stated:

"... in order for a plaintiff to avail himself of the provisions of this statute, he must still initially show that he is either an insured or an employee under Chapter 10 of Title 23. The case of Michel v. Guillot, 186 So.2d 889 (La.App. 1 Cir. 1966) amply demonstrates the requirement that if a person is not a compensation `employee', he must prove status as an `insured' to avail himself of the provisions of LSA-R.S. 22:658. In the Michel case, supra, a guest passenger sued the insurer of the automobile in which she was riding and injured. She also prayed for an award of 12% penalties under LSA-R.S. 22:658. In denying this latter claim, the court said:

`* * * The penalty as provided in said Article is payable to the insured, and Mrs. Michel was not insured by the American Insurance Company. We therefore feel that the Lower Court was incorrect in allowing penalties to Mrs. Michel, * * *.' (Emphasis added)

Keeping in mind the jurisprudential guideline that LSA-R.S. 22:658 is a penalty statute and therefore subject to strict construction (Blanchard v. Hanover Insurance Company, 250 So.2d 484 (La. App. 1 Cir. 1971), we find that Dr. Aswell is neither an insured nor an employee, and therefore cannot avail himself of the provisions of LSA-R.S. 22:658." at pg. 658

It is well settled that the provision in LSA-R.S. 22:658 which imposes penalties and attorney's fees against insurers for their failure to make timely payment to their insureds, being penal in nature, must be strictly construed. Headrick v. Pennsylvania Millers Mutual Ins. Co., 257 La. 1101, 245 So.2d 324 (La.1971); Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (La.1952); Tedesco v. Columbia Ins. Co., 177 La. 142, 148 So. 8 (La.1933). Strict application of this statute mandates that only the insured under the policy sued upon may recover penalties or attorney's fees and that such right cannot be extended to all parties who assert a distinct interest to the proceeds of the policy. Louisiana Bank's *772 claims for penalties and attorney's fees against defendants must therefore be rejected.
IV. WAS THE AWARD OF $50,000.00 IN ATTORNEY'S FEES TO IRA MAY EXCESSIVE?
Pursuant to the above quoted statute the trial court awarded Ira May attorney's fees in the amount of $50,000.00. Counsel for May seeks an increase in this award for services rendered on appeal, while appellants urge that such award was grossly excessive and should be reduced. We find that the trial court committed manifest error in setting attorney's fees at this amount, and we reduce this award to $17,500.00.
LSA-R.S. 22:658 provides for "reasonable attorney's fees" to be recovered against an insurer who arbitrarily withholds payment of its insured's loss claim. In its written reasons for judgment, the trial court stated:
"Plaintiff claims penalties and attorney fees. Mr. Preston N. Aucoin, an Attorney at Law of Ville Platte, Louisiana, testified regarding attorney fees. He testified that after a review of the plaintiff's file, etc., he estimated that plaintiff was entitled to a fee of $83,333.33, one-third of $250,000.00. This figure, under the aggravating circumstances, is not unreasonable. However, plaintiff prayed for the sum of $50,000.00 attorney fees, and the Court cannot allow him more than he prayed for."
Examination of Mr. Aucoin's testimony reveals that his estimation of $83,333.33 as "reasonable" attorney's fees in this case was based upon one-third of Mr. May's potential recovery, or a standard contingent fee arrangement. The record reveals that May and his attorney did enter into a contingent fee agreement prior to the institution of this suit which contract provided for a contingent fee payment to the attorney of one-third of the amount recovered if the filing of suit is necessary. However, in the case of Baghramain v. MFA Mutual Insurance Company, 315 So.2d 849 (La.App. 3rd Cir. 1975), writ refused October 13, 1975, this court specifically rejected the use of contingent fee agreements as the basis for assessing reasonable attorney's fees under LSA-R.S. 22:658. Therein we stated:

"In Redding v. Cade, 158 So.2d 880 (La. App. 3 Cir. 1963), this court, in effect, rejected the contingency basis for awarding reasonable attorney fees. In Redding, we were not favored with expert testimony as to a reasonable attorney's fee for that claim, and based solely on the record (since no one had reviewed plaintiff's counsel's file) we reduced the $5,000 fee awarded to $3,000.

It was established in this case that plaintiff was obligated to pay a contingency fee of $15,000. Both expert witnesses testified this contingent fee was reasonable in this case. We conclude, however, that a contingency fee contract is not the basis upon which a court is to determine `reasonable attorney's fees' as that term is used in LSA-R.S. 22:658." at pg. 854
Each case involving the recovery of reasonable attorney's fees must be evaluated on the basis of its own facts, with such factors being taken into consideration as the services needed to effect recovery, the degree of the professional skill and ability exercised, the volume of work performed, the time devoted to the case and the amount in controversy. McFarland v. Crowley Industries, Inc., 339 So.2d 861 (La.App. 3rd Cir. 1976), writ refused February 18, 1977; Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976); King v. Insurance Company of North America, 288 So.2d 878 (La.App. 3rd Cir. 1974). Plaintiff's attorney testified that his hourly fee was $60.00. In light of his extensive experience and high qualifications as an attorney, we find such an hourly fee to be most reasonable. According to information found in Mr. May's file, his attorney estimated the number of pre-trial hours which he spent on this case to be 132¼. The record reveals that trial of this matter consumed two days, and required certain post-trial work to be performed by May's counsel. Answering this appeal will likewise require work on the part of appellee's *773 attorney. After carefully reviewing the record, particularly the testimony of Mr. Aucoin and plaintiff's counsel himself, and considering the volume of work performed in preparing this case prior to, during, and following trial, as well as the work entailed in answering this appeal, we find that attorney's fees in the amount of $17,500.00 are reasonable and will adequately compensate plaintiff's attorney for services at the trial level and on appeal.
V. DID THE TRIAL COURT ERR IN RENDERING JUDGMENT AGAINST INTERSTATE?
Interstate urges on appeal that it was not an insurer under any of the policies of insurance sued upon by plaintiff, but was rather merely a placing broker for two of the three policies, namely those policies numbered 5913 and 1079. Prior to trial, Interstate filed a motion for summary judgment likewise urging that it was only a broker and not an insurer, in support of which it submitted copies of the insurance policies and an affidavit by the Vice President and General Manager of Interstate. This motion was denied by the court. At trial, Interstate failed to produce any evidence in support of its contention that it was not the insurer under any of the policies sued upon. The trial court determined that Interstate was the insurer under policy number 1079, with coverage in the amount of $75,000.00, and rendered judgment against that party accordingly. After examining the policies in question, we find that the trial court properly held Interstate liable under policy number 1079. We therefore find no merit to this assignment of error.
VI. DID THE TRIAL COURT ERR IN ASSESSING EXCESSIVE LEGAL INTEREST AGAINST INTERSTATE AND LLOYDS?
The judgment of the trial court provides that Interstate and Lloyds shall be cast in judgment under their respective policies along with legal interest thereon from the date of judicial demand until paid. The record reveals that on March 20, 1978 Lloyds and Interstate deposited into the registry of the court the sum of $132,433.44, representing the limits of their respective policies plus interest to date of deposit, which amount was withdrawn by plaintiff and Louisiana Bank on March 22, 1978. We will therefore amend the judgment to indicate that the accrual of interest on this amount will cease as of the date of its deposit into the registry of the court.
In sum, for the above and foregoing reasons, we affirm the trial court judgment insofar as it awards to plaintiff the full policy limits under the Market, Interstate and Lloyds policies with statutory penalties and attorney's fees as against each insurer, reducing the latter, however, to the total sum of $17,500.00; we amend the trial court judgment so as to award legal interest on the face amounts of the Interstate and Lloyds policies from the date of judicial demand to March 20, 1978; we reverse the trial court judgment insofar as it awards attorney's fees to intervenor, Louisiana Bank and Trust Company; we find no merit to plaintiff's contention that this appeal is frivolous; and, in all other respects we affirm the judgment of the trial court. Accordingly, the judgment of the trial court is amended and recast as follows:
IT IS ORDERED ADJUDGED, AND DECREED that:
1. There be judgment rendered herein in favor of IRA MAY and against MARKET INSURANCE COMPANY in the sum of ONE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 ($125,000.00) DOLLARS, plus FIFTEEN THOUSAND AND NO/100 ($15,000.00) DOLLARS penalties (12%), plus attorney fees in the amount of EIGHT THOUSAND SEVEN HUNDRED FIFTY AND NO/100 ($8,750.00) DOLLARS, with legal interest on all amounts from date of judicial demand at the rate of seven (7%) per cent per annum until paid.
2. There be judgment rendered herein in favor of IRA MAY and against INTERSTATE SURPLUS UNDERWRITERS, INC. in the sum of SEVENTY-FOUR THOUSAND FIVE HUNDRED AND *774 NO/100 ($74,500.00) DOLLARS, plus legal interest at the rate of seven (7%) per cent per annum from date of judicial demand until March 20, 1978. Further judgment is herein rendered in favor of IRA MAY and against INTERSTATE SURPLUS UNDERWRITERS, INC. in the sum of EIGHT THOUSAND NINE HUNDRED FORTY AND NO/100 ($8,940.00) DOLLARS penalties, plus attorney's fees in the sum of FIVE THOUSAND TWO HUNDRED FIFTY ($5,250.00) DOLLARS, together with legal interest on the penalties and attorney's fees herein granted from date of judicial demand at the rate of seven (7%) per cent per annum until paid.
3. There be judgment rendered herein in favor of IRA MAY and against LLOYDS OF LONDON in the sum of FORTY NINE THOUSAND FIVE HUNDRED AND NO/100 ($49,500.00) DOLLARS, plus legal interest at the rate of seven (7%) per cent per annum from date of judicial demand until March 20, 1978. Further judgment is herein rendered in favor of IRA MAY and against LLOYDS OF LONDON in the sum of FIVE THOUSAND NINE HUNDRED FORTY AND NO/100 ($5,940.00) DOLLARS penalties, plus THREE THOUSAND FIVE HUNDRED AND NO/100 ($3,500.00) DOLLARS attorney's fees, together with legal interest on the penalties and attorney's fees from date of judicial demand at the rate of seven (7%) per cent per annum until paid.
4. INTERSTATE SURPLUS UNDERWRITERS, INC. and LLOYDS OF LONDON are entitled to a credit of ONE HUNDRED THIRTY-TWO THOUSAND, FOUR HUNDRED THIRTY THREE AND 44/100 ($132,433.44) DOLLARS, the sum deposited by said defendants in the Registry of the Court on March 20, 1978.
5. There be judgment in favor of MARKET INSURANCE COMPANY, INTERSTATE SURPLUS UNDERWRITERS, INC., and LLOYDS OF LONDON, and against intervenor, LOUISIANA BANK AND TRUST COMPANY, dismissing the latter's demand for penalties and attorney's fees.
6. There be judgment herein in favor of intervenor, LOUISIANA BANK AND TRUST COMPANY, and against plaintiff, IRA MAY, in the full and true sum of SIXTY-THREE THOUSAND TWO HUNDRED TEN AND 96/100 ($63,210.96) DOLLARS, together with interest thereon at the rate of ten (10%) per cent per annum from March 22, 1978, until paid, on the sum of FORTY THOUSAND FOUR HUNDRED SIXTY-FIVE AND 41/100 ($40,465.41) DOLLARS; and interest at the rate of eight (8%) per cent per annum from March 22, 1978, until paid, on the remaining balance of TWENTY-TWO THOUSAND SEVEN HUNDRED FORTY-FIVE AND 55/100 ($22,745.55) DOLLARS, to be paid from proceeds received by plaintiff, IRA MAY.
7. The expert fees of M. D. DESCANT, JEROME BULLER, JAMES JOHNSON, and PRESTON N. AUCOIN, are hereby fixed at the sum of TWO HUNDRED AND NO/100 ($200.00) DOLLARS each, to be taxed as costs of Court.
8. MARKET INSURANCE COMPANY pay fifty (50%) per cent of all costs of Court; INTERSTATE SURPLUS UNDERWRITERS, INC. pay thirty (30%) per cent of all costs of Court; LLOYDS OF LONDON pay twenty (20%) per cent of all costs of Court.
Costs of this appeal are to be borne by Market, Interstate and Lloyds.
REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; AND, RENDERED.
NOTES
[1] Prior to this appeal, Mrs. Melda Deville May was substituted as plaintiff-appellee as administratrix of the succession of Ira May.
[2] LSA-R.S. 22:658 provides:

"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
[3] Prior to the issuance of said drafts, defendants received a copy of a contingent fee contract entered into between May and his attorney.
[4] While the record is somewhat vague, Mr. Landreneau's attorney estimated his client's claim to have been between $5,000.00 and $6,000.00.
[5] LSA-C.C.P. Article 2411 provides:

"The judgment creditor, by petition and after the issuance of a writ of fieri facias, may cause a third person to be cited as a garnishee to declare under oath what property he has in his possession or under his control belonging to the judgment debtor and in what amount he is indebted to him, even though the debt may not be due. He may require the third person to answer categorically and under oath the interrogatories annexed to the petition within the delay provided by Article 2412.
The seizure shall take effect upon service of the petition, citation, and interrogatories."
[6] Like Act 168 of 1908, this act made such penalties awardable to the holder or holders of the insurance policy sued upon.