391 So.2d 80 (1980)
Mrs. Beulah Hardin Coulton, wife of/and Thomas J. COULTON
v.
LEVITZ FURNITURE CORPORATION and the Travelers Indemnity Company.
No. 11358.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1980.
*81 Michael F. Grennan, Law Offices of James J. Morse, New Orleans, for defendants-appellants.
Lambert J. Hassinger, New Orleans, for plaintiffs-appellees.
Before BOUTALL, SCHOTT and SARTAIN, JJ.
SCHOTT, Judge.
On October 18, 1976, plaintiff, Mrs. Beulah Hardin Coulton, a customer service representative for defendant, Levitz Furniture Corporation, sustained an injury to her neck and back when she tripped while carrying a package from her desk to an adjoining room. She was paid $95 per week in workers' compensation benefits for permanent total disability under LSA R.S. 23:1221(2) from the date of the accident until February 7, 1979, when the payments were reduced to $36 per week, prompting her to bring this suit against her employer and its insurer, Travelers Insurance Company. The trial judge awarded benefits of $95 per week plus statutory penalties of 12% and attorney's fees in the amount of $5,000. Defendants have appealed from the awards for penalties and attorney's fees. Plaintiff has answered the appeal seeking legal interest on the penalties and attorney's fees, an award for future medical expenses, an award for court costs and expert fees, and an increase in the award for attorney's fees.
Defendants contest plaintiff's entitlement to penalties and attorney's fees on the ground that there was no proof that plaintiff's condition, at the time when her compensation benefits were reduced, was caused by the accident on the job. It also questioned the amount of attorney's fees on the ground that there was no evidence offered at the trial to support the amount awarded. Thus, the principal issue is whether defendants' action in reducing the compensation benefits was arbitrary, capricious or without probable cause such as to justify the imposition of penalties under R.S. 22:658.
The day after the accident plaintiff consulted a general practitioner who examined her and diagnosed a left lumbosacral strain and strain in the left trapezius muscle. The following week she was examined by Dr. Kerr, an orthopedic surgeon. Her principal pain was neck pain. He diagnosed arthritis in the cervical spine at C-5 to C-6 and paraspinous muscle strain. He prescribed medication, heat applications and the use of a cervical collar. When she failed to respond to this treatment he referred her to Dr. Carlos Pisarello, a neurosurgeon.
*82 Dr. Pisarello had seen plaintiff previously for problems in her neck and had performed a laminectomy on her in October, 1969. In December, 1971, she again consulted Dr. Pisarello with complaints in her neck, and after being treated conservatively a second laminectomy was performed on her in January, 1972. When she returned to Dr. Pisarello on Dr. Kerr's referral in December, 1976, she stated that she was experiencing pain in her neck which had begun following her October accident. After running a myelogram on her which proved positive he performed a cervical fusion at the fifth and sixth level of the cervical spine. She continued to complain of pain in her neck over the next several months while she remained under his care until he discharged her in June, 1977. At that time she was still in pain but Dr. Pisarello felt that he could not provide her with further relief.
Thereafter plaintiff continued to be treated for her neck problem by her personal physician, Dr. Gisclair, whose practice was limited to female patients particularly in the area of gynecology.
On January 31, 1978, plaintiff was examined by Dr. E.J. Dabezies, an orthopedic surgeon at the request of defendants, and on February 1 he reported to Travelers that her chief complaint was pain in the left vertebral border of the scapula. She also complained of pain the the dorsum of the forearm on the left and numbness in the thumb and index fingers. His physical examination of plaintiff revealed some tenderness of the cervical musculature and of the left brachial plexus and decreased sensation to touch over the thumb and index fingers. He concluded his report as follows:
"I think that this woman has achieved the maximum benefit of treatment. I do think that she could be employed at some type of sedentary employment. She is going to need continued medical supervision but I do not anticipate that any further surgery will be necessary.
As regards to disability, I would estimate that she has a residual of 20% permanent loss of physical function to the body as a whole."
Defendants took no action after getting this report until a new adjuster was assigned to handle the file. Upon his review of the case in February, 1979, he reduced the benefits to $36 per week, based on Dr. Dabezies's report of February, 1978, and the fact that the only physician treating plaintiff at the time was the gynecologist. He took this action despite the fact that plaintiff was scheduled for another examination by Dr. Dabezies on March 5, 1979, and his file contained a report from Dr. Gisclair dated January 22, 1979, which was as follows:
"In reply to your request for an up to date medical report on the above captioned lady, the following is submitted.
The past history of her neck problems, the cervical disc and fusion surgery, should be in your files.
Mrs. Coulton continues to have neck, shoulder and arm pain. She is never free of discomfort. Limitation of motion is apparent on physical exam, but she has no loss of the sensory nerves. My last examination was December 27, 1978. This case is further complicated by the fact that this lady has cervical arthritis (X-ray reports attached). The latest and effective drugs for this problem has caused her to have Gastrointestinal Bleeding. Consequently drug treatment for regulation of her discomfort is not simple.
I will see this lady again in 2-3 weeks for further evaluation.
This information is submitted to you, with the patient's consent, for evaluation of her claim status."
On March 5, 1979, Dr. Dabezies reported to Travelers that he had seen plaintiff on that date for the purpose of re-evaluation and she complained that her neck problem seemed to be getting worse with neck pain radiating to the left arm and to the ring and little fingers and with numbness in the left index finger and thumb. In his opinion, plaintiff's condition was essentially unchanged from his previous report but he thought "there is a significant element of *83 depression that has developed as a result of this chronic pain syndrome." After recommending re-evaluation by Dr. Pisarello he recommended that plaintiff should be considered as a candidate for the Mercy Hospital Pain Unit to see if this treatment approach would help alleviate her depression and allow her to come to terms with the problem.
Defendants' argument in this court is that they were justified in the reducing of plaintiff's payments because there was no proof of causation of her present condition by the accident in October, 1976. They argue that her previous neck problems and present arthritis were as likely the cause of her present problems as the accident. They point to some statements in the medical testimony that a person in plaintiff's preaccident condition might have developed her present symptoms with or without a traumatic incident. However, we have concluded that the record does support the trial court's conclusion which was inherent in his judgment that the accident caused plaintiff's present condition.
Plaintiff testified that she had no difficulty with her neck for four years prior to the accident and she has continued to suffer since the accident occurred. In answer to the question as to whether the plaintiff's present problems were more likely caused by the accident Dr. Pisarello answered that we have to assume that the accident was in some way the generating factor for that eventual finding. On cross examination, he was asked whether it was just as likely that the accident had nothing to do with her present condition, considering her past history and he stated, "it is conceivable, but it would be a heck of a coincidence." Defendants tried to impeach him based on statements he made at a deposition that her problems were possibly caused by her previous condition and any light strain, but a close reading of the deposition and his testimony at trial shows only that he admitted the possibility of some cause other than the accident and that he could not say with certainty as to what caused her present condition; but he was firm in the opinion that the accident was the probable cause because of the sequence of events as presented. Considering this testimony we cannot say that plaintiff failed to carry her burden of proof or that the trial judge erred in concluding that the accident was the cause of her present condition.
In any event, in this appeal defendants do not seem to take issue with causation per se, but they maintain that they should not be penalized because causation was questionable enough to justify their reduction of compensation benefits. But the record does not support this position. Their adjuster testified that he made his decision because of the 1978 report of Dr. Dabezies, but causation is not questioned in that report. Any equivocation there concerns only the degree of pain or disability being suffered by plaintiff. Furthermore, it is difficult to understand why defendants took action based on this year old report while totally disregarding the recent report from Dr. Gisclair, and despite the fact that they had already scheduled a re-evaluation by Dr. Dabezies for the following month after they reduced her benefits. In argument to this court, defendants contend that their adjuster was justified in taking a fresh look at the case and was therefore entitled to question causation, but we do not find that he based his decision on causation at all. At this point in time it seems that all medical examiners and those handling plaintiff's claim had already concluded that causation was established and the degree of disability alone was in question.
This is borne out also by the fact that defendants only reduced plaintiff's benefits but did not terminate them. The adjuster testified that he arrived at the reduced figure by taking two-thirds of the difference between plaintiff's preinjury wage and what would be the minimum wage at the time of the reduction. Aside from the fact that this approach was without legal foundation it did not indicate that defendants were questioning causation when they made their decision to reduce the benefits.
Defendants next take issue with the award of attorney's fees in the amount of *84 $5,000, contending that the record does not support the award and the amount was unreasonable. They request that we remand the case for evidence on the amount of attorney's fees to be awarded, and refer us to May v. Market Ins. Co., 373 So.2d 763 (La.App. 3rd Cir. 1979) and Crooks v. Southern Cas. Ins. Co., 337 So.2d 915 (La.App. 3rd Cir. 1976) in support of their position.
There is no indication in the Crooks case that any evidence was taken in the trial court bearing on the proper fee amount. The decision simply identifies those events reflected in the record on which the trial court based the award. As to the May case, while there was evidence presented directly bearing on the proper fee to be awarded we are not persuaded that this is necessary in every case.
In Duffour v. Hartford Cas. Co., 359 So.2d 720 (La.App. 4th Cir. 1978) and Wactor v. Gurtler Hebert Const. Co., 343 So.2d 383 (La.App. 4th Cir. 1977) this court affirmed awards of $5,000 for attorney's fees in workers compensation cases based on the services apparent from the record. We have concluded that the trial judge's discretion in setting attorneys fees may be properly exercised without the necessity of evidence directly bearing on the amount of the fee since he may draw a reasonable inference from what took place before him of the time spent by the attorney and the value of the services rendered. Evidence such as that presented in Fazande v. Continental Grain Co., 363 So.2d 1253 (La.App. 4th Cir. 1978) may assist the trial judge but is not essential.
Finally, defendants contend that the fee was excessive in any event. First, from our own review of the record we disagree. This was a contested case involving rather complex medical testimony and included several depositions. Second, the Fazande, Duffour and Wactor cases cited above allowed the same fee in contested workers' compensation cases where attorney's fees were awarded. We are not persuaded that the trial judge abused his discretion in the instant case.
Turning to plaintiff's answer to the appeal she is entitled to legal interest from date of judicial demand on the penalties and attorney's fees, Haynes v. Standard Fire Ins. Co., 370 So.2d 118 (La.App. 1st Cir. 1979); Negem v. Paul Revere Life Ins. Co., 366 So.2d 194 (La.App. 2nd Cir. 1978).
Furthermore, plaintiff is entitled to an increase in the award for attorney's fees because of the additional services rendered in this court. Duffour v. Hartford Cas. Ins. Co., supra. We find that an additional $1,000 is justified by the record.
However, an award for future medical expenses is unnecessary as they are statutorily required to be paid. R.S. 23:1203. See Anderson v. Eagle Asbestos Co., 355 So.2d 1082 (La.App. 4th Cir. 1978).
Finally, we will amend the trial court judgment to cast defendants for all costs, but we will not include any amounts as fees for expert witnesses, leaving this to the trial court to decide on a rule to tax costs should it become necessary.
Accordingly, the judgment is amended to increase attorney's fees to $6,000, to provide for legal interest from date of judicial demand on penalties and attorney's fees and to cast defendants for all costs. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.