378 So.2d 457 (1979)
Sherman DEVILLE, Plaintiff-Appellant,
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 7155.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Rehearing Denied November 21, 1979.
*458 Rozas, Manuel & Fontenot, A. Bruce Rozas, Mamou, for plaintiff-appellant.
Fruge & Vidrine, Jack C. Fruge, Ville Platte, Dubuisson, Brinkhaus & Dauzat by Edward B. Dubuisson, Opelousas, Fusilier, Pucheu, Soileau & Coreil, C. Brent Coreil, Ville Platte, for defendants-appellees.
Before WATSON, CUTRER and DOUCET, JJ.
WATSON, Judge.
Plaintiff, Sherman Deville, instituted this suit against Louisiana Farm Bureau Mutual Insurance Company; its agent, James D. Vidrine; and the latter's errors and omissions insurer, Sequoia Insurance Company, to recover for the fire loss of his home and its contents.
It is undisputed that plaintiff's residence, insured under a Louisiana Farm Bureau policy, was totally destroyed by fire on February 18, 1976. The primary dispute between the parties turns on the question of whether Deville instructed Vidrine to increase the amount of his insurance from $20,000/$10,000 to $30,000/$15,000. The trial court resolved this factual issue against plaintiff. Secondary issues concern the correct award under the policy and penalties and attorney's fees for Louisiana Farm Bureau's failure to pay the loss within 60 days. Plaintiff received the limits shown on the face of the policy, $20,000 for the home and $10,000 for the contents,[1] but was denied penalties and attorney's fees. Plaintiff has appealed, contending that the trial court erred both in the award and the denial of penalties and attorney's fees.
In answers to interrogatories, Louisiana Farm Bureau admitted that the value of the house exceeded $20,000 and admitted being notified of the loss on the day it occurred. Its adjuster, Floyd Tassin, went to inspect the burned premises the following day. The insurer obtained statements regarding the loss from Mr. and Mrs. Deville on February 20, 1976, at Savor Memorial Hospital in Mamou.
At trial, it was established that the house was worth at least $30,000, and there was testimony that its replacement value was between $35,640 and $40,500. Deville testified that it cost him approximately $43,800 to rebuild on the original cement slab with only slight changes.
The 3 year policy provides coverage from December 10, 1974, through December 10, 1977. If paid in annual installments, the premium is shown as $513 or $171 a year. However, the amount actually paid in December of 1974 for the yearly premium was $145.80. (P-2, TR. 301). An endorsement, effective March 5, 1975, added a leased farm and rent house to the policy at an increase in the stated annual premium of $19, from $171 to $190. The pro-rated amount actually paid by Deville at that time was $15. It was stipulated that Deville no longer had this property as of December 2, 1975. A watercraft endorsement, effective August 4, 1975, increased the stated premium by $6 for a total of $196.
Steve Boeta, the Baton Rouge processing supervisor for Farm Bureau Insurance Company, testified that the amount shown as due on Deville's 1975 premium notice was $196. For 1974, the premium was $171, less a dividend of $25.20, or a total of $145.80, but there was no dividend in 1975. In 1973, the premium had been $168, less a dividend of $16.80, or a total of $151.20. According to Boeta's rate sheet, an increase in Deville's coverage to $30,000/$15,000 in 1975 would have cost $72.
On December 22, 1975, a notice was sent by the insurer to Deville and the mortgage holder, Guaranty Bank of Mamou, advising that the premium of $196 had not been paid *459 and the policy would be cancelled for nonpayment within 10 days.
James D. Vidrine visited Deville's home December 23, 1975, in regard to the premium on the policy. Vidrine is an agent for Louisiana Farm Bureau and has authority to bind fire coverage for that company. His compensation is solely from commissions. Both parties agreed that it was customary for Vidrine to pick up Deville's payments since Deville, who has less than a fifth grade education, prefers to handle his business on a personal basis. Deville said that the December meeting was initiated by him because the dues for membership in the Farm Bureau had increased from $15 to $22.50 a year; he wanted to increase his coverage; and he wished to compare some quotations he had received from State Farm with Farm Bureau's rates. The premium quotation from State Farm for $30,000/$15,000 coverage was just over $200. Vidrine admitted that he went to the Deville home because Deville had called him to do so. (TR. 366). It is undisputed that there was a discussion at that time about increasing the coverage on the Deville home from $20,000 to $30,000 and coverage on the contents from $10,000 to $15,000. Vidrine testified that Farm Bureau would have accepted a recommendation from him to increase Deville's coverage.
Vidrine and Deville both said the house was underinsured. According to Vidrine, Deville rejected the increased coverage because it would have cost him approximately $70 over and above the $196. According to Deville, Vidrine calculated the premium cost at $196 for the increased coverage because the farm was deleted and there was an "override". (TR. 267). It was agreed that Deville gave Vidrine a check for $196 (P-3) and another check for $22.50, both written by Mrs. Deville. (TR. 368). Deville testified that the total of $218.50 was only slightly more than the State Farm quotation, and he elected to stay with the same insurer. Farm Bureau had been his insurer since 1969. Vidrine admitted that he made a mistake and charged a farm premium of $19 even though Deville told him he no longer had the farm. (TR. 313).
The check, dated December 23, 1975, was deposited in Baton Rouge by the insurer on December 31. A notice from the insurer dated the same day advised that payment had been received and the policy was in full force and effect.
Deville called Vidrine from the Mamou Hospital the day his house burned and asked Vidrine what coverage he had on the house. Vidrine did not remember but checked his file and found that the policy had a $20,000 limit. He had no notes in his file concerning the December conversation with Deville. Vidrine went to the hospital the next day. Deville thought that his coverage was $30,000/$15,000 instead of $20,000/$10,000. Mr. and Mrs. Deville were described as irate and disturbed when Vidrine told them they had the lesser limits.
Sherman Deville filed suit on April 22, 1976, over 60 days following the fire. No formal proof of loss was ever given to the insurer. After the suit was filed, the insurer tendered payment of $30,000, which was accepted by plaintiff's attorneys on his behalf on May 20, 1976.
Essentially, the dispute between the parties hinges on the credibility of Deville and Vidrine. The trial court was ". . . convinced that there was no request by SHERMAN DEVILLE to increase the coverage on his home. ..." (TR. 198) at the December meeting. The trial court accepted Vidrine's testimony that Deville elected not to increase his coverage over Deville's testimony to the contrary. A trial court's reasonable evaluations of credibility and reasonable inferences of fact are entitled to great weight on appeal. Pierre v. Landry, 341 So.2d 891 (La., 1977). The record affords no basis for this court to substitute its opinion on this issue for that of the trial court. In the absence of an agreement to increase the limits of liability, Deville's recovery under the policy cannot exceed "... the total amount of the insurance. ..." provided by the policy or $30,000. LSA-R.S. 22:695(B).
Sherman Deville did pay an unearned premium of $19 because of an error by Vidrine which he is entitled to recover.
*460 While a formal proof of loss was not given to the insurer, as required by LSA-R.S. 22:691(F), 22:658,[2] and the terms of the policy, the insurer had actual notice of the loss immediately. Both its adjuster and its agent viewed the remains of the house the following day. It is undisputed that the house was completely destroyed and that its value exceeded the amount of insurance. Mr. and Mrs. Deville gave the insurer statements about the loss two days after it occurred. When there is a total loss, exceeding the policy limits, of which the insurer has actual knowledge, the reason for requiring a formal proof of loss is eliminated. Mier v. Niagara Fire Insurance Company, 205 F.Supp. 108 (D.C.1962). A written proof of loss is not required. Artigue v. La. Farm Bureau Mut. Ins. Co., 339 So.2d 880 (La.App. 3 Cir. 1976), writ denied, 341 So.2d 1132. The trial court decided that penalties and attorney's fees were not due because plaintiff did not recover the additional limits he claimed. However, the insurer should have paid at least the undisputed portion of the loss, $30,000, prior to suit being filed. Sbisa v. American Equitable Assur. Co., 202 La. 196, 11 So.2d 527 (1942). When an insurer with actual knowledge of a loss fails to timely pay the amount due after verbal demand, penalties and attorney's fees will be imposed unless there is probable cause for the delay. Riverland Oil Mill v. Underwriters For Lloyd's, 368 So.2d 156 (La.App. 2 Cir. 1979), writ denied, 369 So.2d 1365. Here, there was no question at least $30,000 was due the insured and no cause to delay payment of that amount. Paul v. National Am. Ins. Co., 361 So.2d 1281 (La.App. 1 Cir. 1978), writ denied, 363 So.2d 1385. The trial court erred in failing to award plaintiff Deville a 12% penalty and reasonable attorney's fees for the insurer's arbitrary refusal to pay the $30,000 due under the policy within 60 days of receiving both verbal notice and a statement from the insured. Apparently, the $30,000 was not tendered because Deville would not agree that this was the amount due. The insurer cannot avoid payment of penalties and attorney's fees if it fails to make an unconditional tender of a sum clearly due under the policy. Witherwax v. Zurich Insurance Company, 315 So.2d 420 (La.App. 3 Cir. 1975).
For the foregoing reasons, the judgment of the trial court herein is affirmed insofar as it rejected the demand of plaintiff, Sherman Deville, against Louisiana Farm Bureau Mutual Insurance Company, James D. Vidrine and Sequoia Insurance Company, for a sum in excess of the $30,000 limits of his policy.
The judgment of the trial court herein is amended to award judgment in favor of plaintiff, Sherman Deville and against defendant, Louisiana Farm Bureau Mutual Insurance Company, in the sum of $19.[3]
The judgment of the trial court is further amended to award judgment in favor of plaintiff, Sherman Deville, and against defendant, Louisiana Farm Bureau Mutual Insurance Company, for a penalty of 12% of *461 $30,000 or $3,600 and for reasonable attorney's fees which are fixed at the sum of $2,500, both with legal interest from date of judicial demand, until paid.
All costs of trial and appeal are assessed against defendant-appellee, Louisiana Farm Bureau Mutual Insurance Company.
AFFIRMED IN PART: AMENDED IN PART AND RENDERED.
NOTES
[1] The policy provides $2,000 in coverage for additional living expense (TR. 115), but there is no evidence in the record to support recovery of this sum.
[2] LSA-R.S. 22:658:

"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
[3] Sherman Deville admitted that the insurer had tendered payment of this unearned premium, so penalties and interest are not due on this amount.