543 So.2d 511 (1989)
Marcia Green, Wife of and Arthur Lee WARNER
v.
LIBERTY MUTUAL FIRE INSURANCE COMPANY.
No. 88-CA-2250.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Rehearing Denied June 14, 1989.
*512 William M. Lucas, Jr. (A.C.), Joyce M. Dombourian, Sharon Cormack Mize, Sessions Fishman, Boisfontaine, Nathan, Winn, Butler & Barkely, New Orleans, for plaintiffs-appellees.
Kenny M. Charbonnet, William V. Renaudin, Jr., Metairie, for defendant-appellant.
Before BARRY, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Liberty Mutual Fire Insurance Company, brought this appeal after the trial court disregarded the decision of the jury pertaining to statutory penalties and attorney's fees under LSA-R.S. 22:658 *513 and granted plaintiffs', Marcia Green and Arthur L. Warners', Motion for Judgment Notwithstanding the Verdict awarding them ten percent (10%) of $44,387.88 as penalties and $9,000.00 as attorney's fees. Plaintiffs have answered the appeal, asking for an increase in atttorney's fees for trial level services, additional attorney's fees for the handling of this appeal, court costs and compensatory damages. After reviewing the record, we affirm the trial court's Judgment Notwithstanding the Verdict awarding penalties and attorney's fees because the jury's finding was contrary to the law and the evidence. After Liberty Mutual made its own estimate of structural damages ($20,000.00), its failure to unconditionally tender within the statutory sixty-day period the undisputed portion of structural damages ($20,000.00) and then litigate the contested portion, subjects the insurer to the penalty provisions of LSA-R.S. 22:658. Additionally, we find that the amount set as trial level attorney's fees is neither excessive nor inadequate; the plaintiffs are entitled to attorney's fees for defending this appeal in the amount of $2,000.00; and the plaintiffs' claim for compensatory damages is denied.
FACTS
The home of Marcia G. and Arthur L. Warner and their two children (Warners) was partially destroyed by fire on November 11, 1986, rendering it uninhabitable. The day after the fire, Christopher Broccato, the property claims adjuster for Liberty Mutual examined the scene of the fire to obtain a preview of the necessary repairs and to determine the needs of the Warners. Liberty Mutual then gave the Warners a $5,000.00 advance pursuant to the additional living expenses clause of their policy.[1]
On November 20, 1986, Liberty Mutual dispatched Scott Mullideaux, a self employed contractor who had done a number of estimates for Liberty Mutual over the previous year and one-half, to estimate the construction cost of restoring the Warner home to its former condition. Mullideaux visited the Warners' home on two or three occasions, sometimes bringing along sub-contractors to assist him with his estimate of the structural loss. By the end of November, Mullideaux had formed his estimate for Liberty Mutual, that it would cost $20,606.70 to restore the Warner home to its former condition.
Because the Warners' insurance policy also contained provisions for the replacement of personal property, three or four days after the fire the Warners submitted to Liberty Mutual a handwritten copy of their itemized personal property losses. This handwritten itemization was not considered by Liberty Mutual to be proof of loss, however, so the insurer mailed the Warners a proof of loss claim form on November 17, 1986. As this form was never returned to Liberty Mutual, Liberty Mutual has maintained that it never received satisfactory proof of loss. Nevertheless, when Liberty Mutual eventually paid the Warners' personal property claim on June 12, 1987, the amount of the settlement was based upon the Warners' original handwritten documentation, submitted in mid November, 1986.
In November and/or December of 1986, when Broccato as Liberty Mutual's representative, orally offered the Warners $20,000.00 "as settlement on the property damage", the Warners informed Broccato that the $20,000.00 estimate was not acceptable to them. At trial, Broccato testified that if the Warners had accepted the $20,000.00 offer, he would have understood their action to mean they were closing their claims on the property damage to the house.[2] Broccato also testified that when the Warners asked him what their options were, he only informed them about arbitration. He told them that they could get their own estimates and then have their dispute over the amount of the loss settled by an arbitrator.
*514 The Warners were not told that they had the option of accepting the $20,000.00 offer and then arbitrating or litigating the disputed portion of the structural property loss claim.
Thereafter, the Warners had two independent estimates made of their structural property loss, one by Gilbert J. Blanchard ($33,750.00) on December 1, 1986 and the second by Eddie Walker ($39,353.53) on January 20, 1987. These bids and/or estimates were forwarded to Liberty Mutual as they were obtained, approximately ten days after these specified dates. The Warners also consulted legal counsel and in January, 1987 before the delay period provided by LSA-R.S. 22:658 had expired, the Warners filed this suit.
Because of this dispute and because there was a question as to whether the Warners' attic framing had to be replaced, Liberty Mutual dispatched one of its claims technical specialists, Don Ables, to the Warners' home on March 20, 1987 to make a second estimate on the Warners' structural damage. Ables' estimated that it would cost $29,162.33 to restore the Warners' home to its former condition. At trial, Ables explained that the reason for the cost differential between his estimates and those of the plaintiffs' contractors was in part due to his determination that the ceiling should be painted and the carpets shampooed rather than be replaced and that only 2,000 square feet of sheeting and decking was needed rather than 4,400 square feet.
Approximately two and one-half months after Ables completed his estimate and seven months after the completion of Mulledeaux's estimate Liberty Mutual tendered a check to the Warners in the amount of $44,387.88. The check tendered on June 12, 1987 covered property losses for structural damages in the amount of $29,162.33 (Ables' estimate), as well as additional living expenses and personal property losses. The Warners, however, did not endorse the check until July 3, 1987, when they received Liberty Mutual's letter verifying that the check represented an unconditional tender. Despite this tender, the Warners continued this suit, claiming attorney's fees, penalties, and additional compensation for the structural damages to their home, for their personal property losses and for their additional living expenses.
Trial commenced on January 19, 1988. After the three day trial, the jury rendered a verdict in favor of defendant, Liberty Mutual, and the court adopted the verdict of the jury. Accordingly, the plaintiffs' suit was dismissed and the plaintiffs were assessed with all costs and expert fees. Plaintiffs then filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, asserting their entitlement to recover penalties and attorney's fees under LSA-R.S. 22:658. After a contradictory hearing, the trial judge denied the plaintiffs' Motion for New Trial and granted their Motion for Judgment Notwithstanding the Verdict on April 15, 1988, ordering judgment in favor of plaintiffs and against defendant in the amount of $4,438.79 for penalties and $9,000.00 for attorney's fees. From that judgment, defendant appeals.
A. STATUTORY PENALTIES UNDER LSA-R.S. 22:658
Liberty Mutual contends that the trial court manifestly erred by granting plaintiffs' Motion for Judgment Notwithstanding the Verdict by failing to apply the proper standards of review and by exceeding the proper parameters of review by substituting its own factual determinations for those of the jury. We disagree. The trial court granted plaintiffs' Motion for Judgment Notwithstanding the Verdict because it found that as a matter of law, the decision of the jury with respect to sanctions and attorney's fees under LSA-R.S. 22:658 was wrong and not supported by the evidence. We find that the record overwhelmingly supports this determination, as 1) the jury instructions informed the jury that under Louisiana law an insurer cannot rely upon a dispute as to the value of a loss to escape the penalty provisions of LSA-R.S. 22:658 if the insurer has not unconditionally tendered the undisputed portion of the claim and as 2) undisputed evidence showed that in November of 1986, Liberty Mutual's *515 contractor estimated the Warner house sustained $20,000.00 in structural damage, the Warners' believed this estimate was too low so that a dispute arose, yet, Liberty Mutual failed to unconditionally tender the undisputed $20,000.00 portion of this claim within the statutory delay.
The law pertaining to the payment of fire insurance claims is set forth in LSA-R.S. 22:658 which provides in pertinent part:
Payment of claims, policies other than life and health and accident; penalties; arson-related claims suspension
A. All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty-days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.

* * * * * *
(emphasis added)
As this provision is penal in nature, the statute is to be strictly construed; its stipulated sanctions should be imposed only when the facts negate probable cause for non-payment. Cole v. State Farm Mut. Auto. Ins. Co., 427 So.2d 522, 529 (La.App. 3d Cir.1983), writ den., 433 So.2d 710 (La. 1983); Morgan v. American Fire and Indem. Co., 506 So.2d 785 (La.App. 1st Cir. 1987), writ den., 512 So.2d 458 (La.1987); Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). It is the insured that carries the burden of proving that the insurer's failure to pay was arbitrary and capricious. Rogers v. Ambassador Ins. Co., 452 So.2d 261, 264 (La.App. 5th Cir.1984), writ den., 457 So.2d 14 (La.1984); Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983).
Case law reveals that where there is a reasonable disagreement between the insured and the insurer as to the amount of a loss, the insurer's refusal to pay is not arbitrary, capricious or without probable cause and failure to pay within the statutory delay does not subject the insurer to penalties. Sibley v. Insured Lloyds, 442 So.2d 627, 632 (La.App. 1st Cir.1983). However, if part of a claim for property damage is not disputed, the failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to penalties on the entire claim. Sibley v. Insured Lloyds, 442 So.2d at 632; Leblanc v. Underwriters at Lloyd's, London, 402 So.2d 292, 300 (La. App. 3d Cir.1981); O'Brian v. Allstate Ins. Co., 420 So.2d 1222, 1225 (La.App. 3d Cir. 1982); Balehi Marine, Inc. v. Firemen's Ins. Co., 489 So.2d 1360, 1363 (La.App. 1st Cir.1986); Deville v. Louisiana Farm Bur. Mut. Ins. Co., 378 So.2d 457 (La.App. 3d Cir.1979); rehearing den. Consequently, when such a dispute arises, to avoid the imposition of penalties the insurer must unconditionally tender to the insured the undisputed portion of the insured's claim. Sibley v. Insured, Lloyds, 442 So.2d at 632; Fuselier v. La. Farm Bur. Mut. Ins., 458 So.2d 657, 659 (La.App. 3d Cir.1984).
Without doubt, an insurer cannot rely upon a dispute as to the value of a loss to escape the penalty provisions of LSA-R. S. 22:658 if the insurer has not unconditionally tendered the undisputed portion of the claim. O'Brian v. Allstate Ins. Co., 420 So.2d at 1226. Such a tender is the offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money *516 which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition. May v. Market Ins. Co., 373 So.2d 763, 768 (La. App. 3d Cir.1979), aff'd in part and rev'd in part, 387 So.2d 1081 (La.1980), (citing Black's Law Dictionary (Fourth ed.). Thus, if the insurer conditions its offer to pay an undisputed amount on the insured's acceptance thereof in full payment, the offer is not a tender within the contemplation of LSA-R.S. 22:658 since it is not absolute and unconditional. Fuselier v. La. Farm Bureau Mut. Ins., 458 So.2d 657 (La.App. 3d Cir.1984) [mailing of a check within sixty days of proof of damages does not exonerate the insurer from paying penalties and fees when the offer of payment is in exchange for a complete release of insured's claim. The insurance adjuster admitted that the checks sent to plaintiff were conditioned upon his granting a full release of all claims.]; Cotton v. Commercial Union Ins. Co., 486 So.2d 297 (La.App. 3d Cir. 1986) [the insurer proffered a $20,000.00 check to the insured. However, as the check contained an endorsement which incorporated full release language, the insurer was liable for penalties and attorney's fees for failing to make an absolute and unconditional tender.]; Bellard v. Safeway Ins. Co., 442 So.2d 1314 (La.App. 3d Cir. 1983) [the draft which Safeway presented to plaintiff for payment of his medical bills contained a printed endorsement which incorporated "full release" language; therefore, the tender was not absolute and unconditional]; Haynes v. Standard Fire Ins. Co., 370 So.2d 118 (La.App. 1st Cir.1979) [the tender was not absolute and unconditional by virtue of the fact that a named payee on the draft was not shown to have an interest in the draft]; Balehi Marine, Inc. v. Firemen's Ins. Co., 489 So.2d 1360 (La.App. 1st Cir.1986) [although Firemen's mailed the draft within the sixty day period, because the draft was conditioned on its being in full settlement of the claim, Firemen's is liable for penalties and attorney's fees on the entire amount].
Turning to the case at hand, the jury found that 1) Liberty Mutual had not received satisfactory proof of loss; 2) Liberty Mutual had made an unconditional tender of the undisputed portion of the insureds' claim within sixty days of its receipt of satisfactory proof of loss; and 3) Liberty Mutual did not act in an arbitrary and capricious manner in not paying the claim within sixty days of satisfactory proof of loss.[3] However, on the Warner's Motion for Judgment Notwithstanding the Verdict, the trial court concluded that in making these findings the jury erred as a matter of law and must have misunderstood or misapplied the law to the facts of the case.
In reaching its decision to grant the Motion for Judgment Notwithstanding the Verdict, the court below did not have to weigh the evidence or pass on the credibility of witnesses. Instead, considering all the evidence and accepting it in favor of Liberty Mutual, the party against whom the motion was made, the judge found the law and the evidence that had been presented to the jury on the issue of the Warner's statutory right to recover penalties and fees was so overwhelmingly in favor of the Warners that reasonable persons could not have arrived at a verdict denying the Warners statutory penalties and fees. The instructions provided to the jury informed them that under Louisiana law, an insurer cannot rely upon a dispute as to the value of a loss to escape the penalty provisions of LSA-R.S. 22:658 if the insurer has not unconditionally tendered the undisputed portion of the claim. *517 And the evidence provided by Liberty Mutual's own witnesses was that Liberty Mutual, through its agent Mullideaux's estimate, had actual knowledge in November 1986 that the Warners' property loss was at least $20,000.00. Nevertheless, Liberty Mutual failed to make an unconditional tender of $20,000.00 to the Warners within sixty days of the date Mulledeaux completed his property loss estimate. Thus, the trial judge applied proper standards when he reveiwed the jury's verdict and granted plaintiffs' Motion. See Rougeau v. Commercial Union Ins. Co., 432 So.2d 1162 (La.App. 3d Cir.1983), writ den., 437 So.2d 1149 (La.1983); Blum v. New Orleans Public Service, 469 So.2d 1117, 1119 (La. App. 4th Cir.1985), writ den., 472 So.2d 921 (La.1985); Webb v. Goodley, 512 So.2d 527 (La.App. 3d Cir.1987); Streeter v. Sears, Roebuck and Co., 533 So.2d 54 (La.App. 3d Cir.1988), writ den., 536 So.2d 1255 (La. 1989).

a. Liberty Mutual Had Satisfactory Proof of Loss
Liberty Mutual's property claims adjuster, Broccato, viewed the remains of the Warner's home the day after the fire. And within ten days of the fire, Broccato sent the construction contractor, Mullideaux, to estimate the cost of repairing the Warners' home. By the end of November, Mullideaux had formed his estimate, recommending that it would cost the Warners $20,606.40 to restore their home to its former condition. As it is not necessary for proof of loss to be in writing or in any other formal style, Sevier v. United States Fidelity & Guar., 497 So.2d 1380, 1384 (La.1986) ["proof of loss" under Section 658 is a flexible requirement to advise the insurer of the facts of the claim, it is not required to be in any formal style]; Hut of Louisiana, Inc. v. Zurich Ins. Co., 372 So.2d 687, 688 (La.App. 1st Cir.1979), rehearing den., Liberty Mutual's actual knowledge of the Warners' loss in November of 1986, constituted satisfactory proof of loss under LSA-R.S. 22:658(A). See Sevier v. United States Fidelity & Guar., 497 So.2d at 1384 ["As long as the insurer receives sufficient information to act on the claim, `the manner in which it obtains the information is immaterial'"]; McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1980); Landry v. State Farm Ins. Co., 529 So.2d 417 (La.App. 1st Cir.1988); See Deville v. Louisiana Farm Bur. Mut. Ins. Co., 378 So.2d 457, 460 (La.App. 3d Cir. 1979), rehearing den. Consequently, the trial judge was correct in concluding that as a matter of law, the jury erred when it found Liberty Mutual had not received satisfactory proof of the Warners' claim of structural property loss.

b. Liberty Mutual Failed to Make an Unconditional Tender Within the Statutory Delays
Likewise, the evidence supports the trial judge's conclusion that the jury misunderstood and/or misapplied the law when it found Liberty Mutual made an unconditional tender of the undisputed portion of the insureds' claim within sixty days of its receipt of satisfactory proof of loss. First, Liberty Mutual's offer of $20,000.00, unaccompanied by a contemporaneous proffer of that amount of money, is not a tender within the meaning of LSA-R.S. 22:658. See May v. Market Ins. Co., 373 So.2d at 768. Secondly, assuming in arguendo as did the trial judge that such an "offer" is equivalent to a tender, it is not an unconditional tender because it was not made without stipulations or conditions.
In December of 1986 when Broccato offered the Warners $20,000.00 for their structural property loss claim on their home, the offer was a settlement as it was Broccato's testimony that if the Warners had accepted the $20,000.00 offer, he (and Liberty Mutual) would have considered their acceptance as full settlement of their property claim on the house. Fuselier v. La. Farm Bur. Mut. Ins., 458 So.2d at 657 [insurance adjuster admitted that the checks sent to plaintiff were conditioned upon his granting a full release of all claims; consequently, the insurer was not exonerated from paying penalties and fees]; See also McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La.1985) [a reasonable amount must be "unconditionally tendered to the plaintiff not in settlement *518 of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured"]. Additionally, when Broccato offered the Warners the $20,000.00 and they indicated to Broccato that the amount was unacceptable to them, the Warners were led to believe that they could not accept the $20,000.00 and then proceed with their claims for additional sums. Instead, Broccato told them that their only option was to get their own estimates and then turn the matter over to an arbitrator. These circumstances indicate that Liberty Mutual's offer was made in virtually a "take it or leave it" fashion, and that the $20,000.00 offer was conditioned upon the Warners' full settlement of the property claim on their home.

c. Liberty Mutual's Action Were Arbitrary and Capricious
Finally, the record also overwhelmingly supports the trial judge's conclusion that the jury erred as a matter of law by finding Liberty Mutual's failure to pay the claim and/or tender the undisputed portion of the claim within sixty days of satisfactory proof of loss was not arbitrary and capricious.
Even if a valid dispute over the total amount owed existed, Liberty Mutual was required by statute to unconditionally tender within the sixty-day period the $20,000.00 assessed as damages by its construction contractor and/or property claim adjuster. Its failure to do so was arbitrary, capricious and without probable cause. Holmes v. Motors Ins. Corp., 277 So.2d 472, 474 (La.App. 4th Cir.1973); See Sibley v. Insured Lloyds, 442 So.2d at 632 [Lloyds own appraisal acknowledged that damages were at least $5,056.20; thus, Lloyd's failure to make an unconditional tender of that amount and litgate the issue of whether or not the trailer was a total loss, subjected it to statutory penalties]; Leblanc v. Underwriters at Lloyd's, London, 402 So.2d 292 (La.App. 3d Cir.1981) [as there was never any question that plaintiff suffered a loss of a horse and as the horse was purchased as a colt for $5,000.00, defendant's failure to unconditionally tender at least that amount, the undisputed portion of the value assigned to the horse, properly subjected defendant to penalties and fees]. Thus, Liberty Mutual's failure to unconditionally tender to the Warners what it believed to be the proper amount owed, subjects the insurer to statutory penalties. Holmes v. Motor Ins. Corp., 277 So.2d at 474; Cotton v. Commercial Union Ins. Co., 486 So.2d at 300.[4]
Based upon the foregoing, we find that the trial court's judgment, granting plaintiffs' Motion for Judgment Notwithstanding the Verdict and awarding plaintiffs attorney's fees and statutory penalties of ten percent (10%) of the $44,387.88 paid to plaintiffs by Liberty Mutual seven months after the fire, is overwhelmingly supported by the record. Accordingly, the Judgment Notwithstanding the Verdict is affirmed.[5]
B. ATTORNEY'S FEES

a. trial level
In its judgment on plaintiffs' Motion for Judgment Notwithstanding the Verdict, the trial court awarded plaintiffs $9,000.00 as reasonable attorney's fees for prosecuting this claim. LSA-R.S. 22:658. Defendant complains that the award greatly exceeds the reasonable amount evidenced by Mr. Lucas's time sheets, while plaintiffs allege that the award should be increased to $13,500.00. Both parties' assertions, however, are without merit and we affirm the trial court's award.
The amount of attorney's fees to be awarded is a matter within the discretion of the trial court. Balehi Marine v. Firemen's Ins. Co., 489 So.2d at 1363. At trial, plaintiffs presented sufficient evidence to support the trial court's award. As we *519 find the amount awarded is neither inadequate nor excessive, we have no cause to alter the award.

b. appellate level
In their answer to defendant's appeal, plaintiffs also request $3,000.00 in attorney's fees for defending this appeal. We agree that plaintiffs are entitled to an award for appellate level attorney's fees, Balehi Marine v. Firemen's Ins. Co., 489 So.2d at 1363; Haynes v. Standard Fire Ins. Co., 370 So.2d 118, 121 (La.App. 1st Cir.1979); but see Gagnard v. Travelers Ins. Co., 380 So.2d 191, 196 (La.App. 3d Cir.1980), to compensate for the additional time and labor of plaintiffs' attorney that has been expended during the preparation of appellate briefs and during oral arguments. We find $2,000.00 is an adequate and reasonable award.
The legal interest on this portion of plaintiffs' recovery to commence on the date this decision is rendered. Sibley v. Insured Lloyds, 442 So.2d at 633.
C. PLAINTIFFS' CLAIM FOR COMPENSATORY DAMAGES
In their answer to defendant's appeal, plaintiffs also contend that they are entitled to compensatory damages for the amount necessary to return their home to its original condition and for their unreimbursed living expenses, totalling $16,990.00. This issue was litigated in the lower court and the jury concluded that the plaintiffs were not entitled to additional compensation for structural property damage, personal property damage and/or living expenses.[6] After reviewing the record, we affirm the findings of the jury.
The principles governing appellate review of factual findings of the trier of fact are unequivocally set forth in Arceneaux v. Dominigue, 365 So.2d 1330 (La.1978). Our review of the record, in light of those principles governing appellate review, reflects that the jury did not clearly err when they determined that the Warners were not entitled to additional compensation for such things as returning their home to its original condition by replacing the carpets instead of merely cleaning them. The evidence on record, reasonably evaluated for credibility, furnishes ample basis for the jury's finding. Accordingly, the judgment of the jury as to additional compensatory damages is affirmed.
For the reasons assigned, the judgment of the trial court on plaintiffs' Motion for Judgment Notwithstanding the Verdict and the judgment of the jury on the issue of compensatory damages, are affirmed. Plaintiffs are awarded $2,000.00 in attorney's fees for defending this appeal and all costs are assessed against defendant.
AFFIRMED AND AS AMENDED, AFFIRMED
NOTES
[1] This additional living expenses advance is not relevant to the issue of the correctness of the Judgment Notwithstanding the Verdict and/or the issue of whether the insurer is liable for sanctions and attorney's fees due to its failure to unconditionally tender to the insured, within the statutory delays, the undisputed portion of the claim for structural damages.
[2] Broccato left the employ of Liberty Mutual on December 24, 1987.
[3] While it is not possible for this court to know what evidence the jury considered when answering these overly broad interrogatories, a review of the trial testimony indicates that the jury might have confused and/or interchangeably considered the separate and distinct issues of proof of loss of personal property (i.e. Christmas ornaments, suit cases, etc.) and proof of loss of property loss (structural repairs to the home). The Judgment Notwithstanding the Verdict is predicated soley upon the insurer's failure to pay within the sixty days of its proof of loss of the Warners property loss (structural repairs). The trial court's Judgment on the Motion is not based upon the Warners' proof of loss of personal property, which was a contested trial issue.
[4] The amount that defendant paid the Warners for additional living expenses and personal property loss was not altered by a jury award and was not altered by the judgment N.O.V. Hence, those items are not addressed in this portion of the opinion.
[5] Failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim. Sibley v. Insured Lloyds, 442 So.2d at 632.
[6] The trial court's Judgment Notwithstanding the Verdict did not address this issue.