# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1103


LOUISIANA BAG COMPANY, INC. AND
LAPAC MANUFACTURING, INC.

VERSUS

AUDUBON INDEMNITY COMPANY


************

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ACADIA, DOCKET NO. 80995
## HONORABLE PATRICK MICHOT, DISTRICT JUDGE

************

## JAMES T. GENOVESE
## JUDGE

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and James T. Genovese, Judges.

**REVERSED AND RENDERED.**

**Robert A. Robertson**
**Allen & Gooch**
**1015 St. John Street**
**Post Office Box 3768**
**Lafayette, Louisiana 70502-3768**
**(337) 291-1440**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
     **Louisiana Bag Company, Inc., and**
     **LaPac Manufacturing, Inc.**

**Robert I. Siegel**
**Gieger, Laborde & Laperouse, L.L.C.**
**701 Poydras Street, Suite 4800 - One Shell Square**
**New Orleans, Louisiana 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Audubon Indemnity Company**

**GENOVESE, JUDGE.**

Plaintiffs are appealing the dismissal of their claim for penalties and attorney fees pursuant to La.R.S. 22:658 against Defendant, their commercial property insurer, as a result of a fire loss claim. For the following reasons, we reverse and render.

## FACTS

On April 20, 2003, a fire destroyed the manufacturing plant and warehouse facilities of Plaintiffs, Louisiana Bag Company, Inc. and LaPac Manufacturing, Inc. (collectively referred to herein as Louisiana Bag). At the time of the occurrence, Louisiana Bag was insured through a commercial lines policy of property insurance issued by Defendant, Audubon Indemnity Company (Audubon). The policy of insurance provided coverage for the manufacturing plant, the warehouse facilities, and the movables located on the premises against the risk of fire. The Audubon policy provided the following coverage: (1) $1,285,240.00 for the building; (2) $2,000,00.00 for the stock; (3) $61,345.00 for the contents; (4) $23,874.00 for the Electronic Data Processing (EDP) owned equipment; and (5) $2,500.00 for media.

Audubon issued a total of five payments to Louisiana Bag in the course of adjusting the claim. However, when the insurer failed to pay the balance of the unpaid policy limits, Louisiana Bag instituted the instant litigation, asserting its entitlement to the unpaid policy limits, as well as an award of penalties and attorney fees for Audubon's failure to comply with the statutory time limits pursuant to La.R.S. 22:658.

Following a bench trial on March 13, 2007, the trial court found that Louisiana Bag had failed to prove arbitrary and capricious conduct on the part of Audubon. Thus, judgment was rendered in favor of Audubon dismissing all of the claims

1

asserted by Louisiana Bag.[1]  It is from this judgment that Louisiana Bag appeals.

## ISSUES

Louisiana Bag presents the following issues for our review:

I.  Whether the Trial Court erred in accepting [Audubon's] position that "proof of loss" is a document which must be issued by the insurer rather than a moment in time when the insurer obtains sufficient information to act on a claim; and further erred in failing to find that [Audubon] had satisfactory proof of loss either from the inception of the claim, or in the alternative, by August, 2003[;]

II.  Whether the Trial Court erred in failing to find that [Audubon] had a duty to tender the undisputed portions of the claim within thirty days of proof of loss[;]

III.  Whether the Trial Court erred in its determination that [Audubon] was not arbitrary and capricious in its inability or unwillingness to locate, read and interpret the clear language of its own policy[; and]

IV.  [Whether t]he Trial Court erred in finding that the issue of damage to the concrete slab was sufficient to withhold payment of the entire claim.

## LAW AND DISCUSSION

*Standard of Review*

Our review of the trial court judgment denying Louisiana Bag's claim for penalties and attorney fees is governed by the manifest error or clearly wrong standard of review.  *Reed v. State Farm Mut. Auto. Ins. Co.*, 03-107 (La. 10/21/03), 857 So.2d 1012; *Calogero v. Safeway Ins. Co.*, 99-1625 (La. 1/19/00), 753 So.2d 170; *Gibson v. Allstate*, 02-892 (La.App. 3 Cir. 12/11/02), 832 So.2d 1209.

*Statutory Penalty Provision*

Louisiana Revised Statutes 22:658, effective August 15, 2003[2], provided in

_____

[1]By the date of trial, Audubon had paid the remaining policy limits.  Therefore, the only remaining issue before the trial court was whether penalties and attorney fees were warranted.

[2]Louisiana Revised Statutes 22:658 was amended by 2003 La. Acts No. 790, § 1, effective August 15, 2003.

pertinent part as follows:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, 657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
>
> . . . .
>
> (4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
>
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, . . . .

*Proof of Loss*

Louisiana Bag contends that the trial court erroneously concluded that "proof of loss" was a document issued by Audubon which triggered the statutory delays for payment, rather than that certain point in time in adjusting the claim that Audubon had sufficient information to act on the claim and render payment. It is the contention of Louisiana Bag that Audubon had satisfactory proof of loss from the inception of the claim, or alternatively, by August of 2003.

Louisiana Revised Statutes 22:658 does not provide a definition of "proof of loss." Guidance may be found in the jurisprudential application of La.R.S. 22:658 and similar penalty provisions. A seminal case on proof of loss is that of *McDill v. Utica Mutual Insurance Co.*, 475 So.2d 1085 (La.1985), which dealt with a claim

3

against an uninsured/underinsured motorist liability insurer. In *McDill*, our supreme court phrased the issue before it as whether the plaintiff carried his burden of providing the insurer with "sufficient proofs of loss." *Id*. at 1089. Citing *Hart v. Allstate Insurance Co.*, 437 So.2d 823 (La.1983), the supreme court defined a "satisfactory proof of loss" as "that which is sufficient to *fully apprise* the insurer of the insured's claim." *Id*. Additionally, in a matter involving a suit against a fire insurer for penalties and attorney fees, the fourth circuit made the following observation regarding "proof of loss":

> [I]t is not necessary for proof of loss to be in writing or in any other formal style, *Sevier v. United States Fidelity & Guar.*, 497 So.2d 1380, 1384 (La.1986) ["proof of loss" under Section 658 is a flexible requirement to advise the insurer of the facts of the claim, it is not required to be in any formal style]; *Hut of Louisiana, Inc. v. Zurich Ins. Co.*, 372 So.2d 687, 688 (La.App. 1st Cir.1979), *rehearing den.*, . . . *See Sevier v. United States Fidelity & Guar.*, 497 So.2d at 1384 ["As long as the insurer receives sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial'"]; *McDill v. Utica Mutual Ins. Co.*, 475 So.2d 1085 (La.198[5]); *Landry v. State Farm Ins. Co.*, 529 So.2d 417 (La.App. 1st Cir.1988); *See Deville v. Louisiana Farm Bur. Mut. Ins. Co.*, 378 So.2d 457, 460 (La.App. 3d Cir.1979), *rehearing den*.

*Warner v. Liberty Mut. Fire Ins. Co.*, 543 So.2d 511, 517 (La.App. 4 Cir. 1989). For the reasons which follow, we find that Audubon was provided with satisfactory proof of loss of the damage sustained to the building, its contents, and of the damage resulting from the loss of the stock asserted by Louisiana Bag at least by the end of August of 2003.

The fire giving rise to the subject litigation occurred on April 20, 2003. On April 22, 2003, Mr. Bill Adams, an outside independent adjuster retained by Audubon, went to the location of the insured premises and inspected the loss. Mr. Adams stated he did not know that the loss to Louisiana Bag caused by the fire was a total loss, but that "it was evident that it would be more than a million dollars."

4

Within days, on April 25, 2003, Mr. Adams issued a report to Audubon on his sight investigation wherein he stated that "it appears at this time the insured has a loss well in excess of the policy limits for building, stock, et cetera, and the deductible can be applied to the overall loss." This initial report, and the reports which followed, were sent by Mr. Adams to Mr. Lorenzo Spencer, the examiner with Audubon to whom Mr. Adams was reporting.

A second report was issued to Audubon by Mr. Adams on May 27, 2003. Mr. Adams advised Mr. Spencer again that "it appears at this time the insured has a loss well in excess of the limits."

In order to further evaluate the loss sustained by Louisiana Bag, Audubon retained various experts. Unified Investigations and Sciences (Unified Investigations) was consulted regarding the cause and origin of the fire to rule out arson or some other cause of the fire for potential subrogation claims. Arson was ruled out early in the investigation and did not remain an issue. Unified Building Services (UBS), building consultants hired by Audubon, was retained to compute a replacement figure for the destroyed building. In the course of determining the amount of damage to the building, the question of the viability of the concrete slab arose. Audubon then hired an engineer to ascertain the degree of damage to the slab. Additionally, since all of the stock of Louisiana Bag was destroyed in the fire, Audubon hired Buchanan, Clarke, and Schlader (BCS), forensic accountants, to calculate the amount of stock, and the value thereof, that was on location at the time of the loss.

On June 20, 2003, Mr. Adams issued a third report to Audubon. Attached thereto were the invoices of Unified Investigations and BCS. Also attached was a contents inventory, which had been provided by Louisiana Bag, and a June 18, 2003 report of BCS, which provided the stock valuations. Using two different methods of

5

calculation, BCS computed a stock value of $3,639,148.00, and alternatively, of $3,601,931.00. Additionally, by this date, Mr. Adams had been verbally informed by UBS that the building loss was approximately $1,500,000.00. In this third report, Mr. Adams again advised Audubon that the damages exceeded the policy limits and that it appeared that there had a been a total loss. Mr. Adams also attached a demand which had been made by Louisiana Bag for payment under the policy.

On July 8, 2003, Audubon issued an advance payment to Louisiana Bag of $1,000,000.00. Mr. Adams testified that he had not yet made any formal recommendations to Mr. Spencer regarding the payment of policy limits at this time. However, this partial payment represented "the bare minimum that [he] thought it could be. . . ."

A fourth report was issued by Mr. Adams to Mr. Spencer on July 17, 2003, which provided the same estimations of loss which had been provided in the three prior reports. Along therewith, Mr. Adams provided Mr. Spencer with a copy of the UBS report dated June 27, 2003 containing the cost valuations for the building. UBS provided a value of $1,391,579.00 for the replacement cost of the entire structure, including the slab. Additionally, considering the issues which had arisen relative to the viability of the slab, a second valuation of $733,000.00 was given which excluded the slab from the calculation. Mr. Adams again provided the accountants' stock damage calculation of approximately $3,600,000.00.

The record reveals other issues which had arisen in the course of adjusting the claim of Louisiana Bag. The primary issue involved coverage provisions under the insurance policy for the insured's stock and whether the stock was covered on a blanket basis or on a per location basis. To resolve this issue, the policy was requested, and, due to conflicting information, a legal opinion was requested by

Audubon. On August 27, 2003, the legal opinion on coverage was issued advising Audubon that the stock was covered on a blanket basis.

Mr. Adams issued a fifth report to Mr. Spencer on August 21, 2003. With this report, Mr. Adams attached a statement of loss along with a recommendation to pay the remaining policy limits. The report stated as follows:

> Enclosed is a proposed Statement of Loss to conclude the claim based on a loss of $5,190,872.82. As per the enclosed Statement of Loss, after application of the policy limits for building, stock, office contents and computer equipment, the claim is calculated in the amount of $3,266,309. An advance payment of $1,000,000 has been made to the insured which makes for a recommended net concluding payment as outlined of $2,266,309.00.

Therefore, despite any issues which may have arisen regarding the policy, or any valuation issues relative to the building, stock, office contents, and computer equipment, the facts in this case unequivocally establish that all of these issues were resolved in their entirety by the end of August of 2003. The record in this case contains no reasonable factual basis to conclude otherwise, nor is there any other permissible view of the evidence. This information, which was provided to Audubon, was sufficient to "fully apprise" the insurer of the amount of damages sustained by Louisiana Bag. Satisfactory proof of loss having been presented to Audubon, the statutory time delays for payment to be made under the policy began. Undisputedly, another payment was not made until October 8, 2003. On said date, Audubon issued a $500,000.00 check to Louisiana Bag which was only a partial payment and which was well beyond thirty days. On October 29, 2003, two subsequent payments were issued in the amounts of $1,678,590.00 and $87,719.00. A final payment of $12,500.00 was issued to Louisiana Bag on February 19, 2004 to cover the cost of the debris removal.

Having determined that Audubon received satisfactory proof of loss by the end

7

of August of 2003, and given Audubon's failure to meet the statutory delays for payment, the question which we are called upon to decide is whether the failure to make payment was arbitrary and capricious. For the reasons that follow, we find that the uncontradicted facts in the record clearly indicate that Audubon was arbitrary and capricious.

*Arbitrary and Capricious*

Audubon asserts that it was not arbitrary and capricious in the handling of the claim. Rather, it contends that there were several valid reasons requiring further investigation. Audubon argues in brief that the "complexity of the loss" must be considered which required "expert adjusters and consultants . . . to detail the loss, determine what is salvageable, and essentially tell the story of the accident." The facts in the record clearly establish that ample investigation was conducted by Audubon through its own hired experts during a four month period, all of which indicated that the fire caused a total loss to the property of the insured.

One "major plot twist" discussed by Audubon was the question which arose during the adjusting of the claim about the viability of the slab foundation of the building. While we acknowledge that the question of the condition of the slab necessitated further investigation, we find that once Audubon was provided with the valuations, it still failed to timely make payment under the policy. As early as June 16, 2003, Mr. Adams was informed by UBS that the replacement cost of the building was approximately $1,500,000.00 which was obviously in excess of the $1,285,240.00 policy limits. The final opinion from UBS of June 27, 2003 provided documentation of a replacement cost of $1,391,579.00. Again, the figures were clearly in excess of the policy limits. Despite these figures, and contrary to the experts' opinion and the recommendation of Mr. Adams in his report of August 21,

2003, and the legal opinion as to the coverage on the stock issued August 27, 2003, Audubon still did not issue a payment until October of 2003.

Based upon a thorough review of the record, we find that the failure of Audubon to pay its policy limits for the damage sustained by Louisiana Bag to the building, contents, and computer equipment was arbitrary and capricious. The damage to the building as a result of the fire, including its contents and computer equipment, was readily apparent. Mr. Adams was of the opinion that it appeared to be a total loss from the date of his sight investigation just days following the fire. This opinion was conveyed to Mr. Spencer early in the investigation of the claim and consistently throughout. Additionally, although Mr. Adams recommended that an expert be retained to perform an evaluation of the building in April of 2003, it was not done until June of 2003. Ultimately, the extent of the loss was confirmed by the documentation which was assembled at the request of Audubon and which was provided to Audubon by the end of August of 2003. These figures confirmed the "apparent" loss to Louisiana Bag and confirmed that the loss exceeded the policy limits. Despite this, timely payment in accordance with La.R.S. 22:658 was not made by Audubon under the policy.

The second major "twist" described by Audubon was the issue of the extent of the stock coverage provided by the policy. The record reflects that the proposal issued by Audubon relative to the stock coverage was inconsistent with the policy that was ultimately issued. However, we note that this error was solely the fault of Audubon who, ironically, could not determine the type and extent of stock coverage provided for in its own policy. Moreover, the error was detected in June of 2003 and was brought to the attention of Audubon for the very purpose of preventing any delay in payment being made under the policy. Thus, after being provided with the

9

accountants' report of June 18, 2003 with values for the loss of the stock well in excess of the policy limits for the stock, and even after the August 27, 2003 issuance of the legal opinion which it had requested, Audubon failed to make timely payment for the loss of the stock.

We also find that Audubon was arbitrary and capricious in its failure to pay its policy limits for the stock of Louisiana Bag damaged by the fire. Stock valuations provided by the independent accountants equaled approximately $3,600,000.00. This damage assessment also exceeded the policy limits, yet Audubon failed to timely make payment to Louisiana Bag even after all of the remaining policy issues had been resolved by the end of August of 2003. In fact, the record reveals that Audubon failed to pay the full policy limits for coverage to the building, stock, contents, and computer equipment until the end of October of 2003. Admittedly, by this date, Audubon had made some partial payments under the policy. However, its statutory obligation as to the building and the stock was only partly satisfied.

Mr. Adams's report of August 21, 2003 provided the total figure of the loss and the recommendation for payment. All documentation had been supplied to Audubon in support of same. Yet, inexplicably, payment of the remaining policy limits was still not forthcoming. This is true despite the continuing advice of Mr. Adams that the claim exceeded policy limits and despite any evidence whatsoever to the contrary. Even after Audubon's receipt of the legal opinion dated August 27, 2003 relative to the stock coverage, the payment of $500,000.00 was not made until October 7, 2003.

*Duty to Tender Undisputed Portion*

Audubon asserts in brief that it was not "fully apprised" of the loss sustained by Louisiana Bag in order to trigger the statutory time delays until January of 2004.

10

It was at this time that the outstanding claims for debris removal and personal effects were concluded. As noted above, Audubon did make payment on February 19, 2004, of $12,500.00. Audubon concludes, therefore, "the entire amount of the claim was timely paid within [thirty] days" and that "the trial court was correct in finding that Audubon's efforts were reasonable, in good faith, and far removed from the vexatious behavior described in La.R.S. 22:658." We disagree.

It is clear that the failure of an insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to liability for penalties on the entire claim. *Sibley v. Insured Lloyds*, 442 So.2d 627 (La.App. 1 Cir. 1983). For the reasons discussed above, Audubon possessed sufficient proof of loss relative to the damage to the building, stock, contents, and computer equipment of Louisiana Bag by the end of August of 2003. Even if the claims for debris removal and personal effects were not concluded as of August of 2003, Audubon could not for those reasons withhold payment of the uncontradicted and, therefore, undisputed portion of the claim. Consequently, Audubon subjected itself to the penalty set forth in La.R.S. 22:658 in effect after August 15, 2003.

For the foregoing reasons, we find from the record that a reasonable factual basis did not exist for the trial court's finding that the conduct of Audubon was not arbitrary and capricious in violation of La.R.S. 22:658, and we conclude that the trial court committed manifest error and that its finding was clearly wrong. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). We, therefore, reverse the judgment of the trial court dismissing the claim of Louisiana Bag against Audubon for penalties pursuant to La.R.S. 22:658.

*Award of Penalties and Attorney Fees*

For the reasons set forth above, we find that Audubon had satisfactory proof

11

of loss as to the building, stock, office contents, and computer equipment by the end of August of 2003. As required by La.R.S. 22:658 in effect as of August 15, 2003, Audubon failed to make payment under its policy within thirty days after receipt of said satisfactory proof of loss as to the building, stock, office contents, and computer equipment. Therefore, in accordance with law, Audubon is assessed a penalty in the amount of twenty-five percent of the remaining and unpaid policy limits relative to the building, stock, office contents, and computer equipment only. As of October 1, 2003, Audubon had paid $1,000,000.00 on the claims of Louisiana Bag. As per Mr. Adams's report to Mr. Spencer of Audubon, the claim was calculated at $3,266,309.00. After factoring in the $1,000,000.00 paid by Audubon toward this claim of $3,266,309.00, the uncontradicted net amount owed by Audubon under the policy is $2,266,309.00. Twenty-five percent of $2,266,309.00 amounts to $566,599.75. We, therefore, award Louisiana Bag a penalty to be paid by Audubon in the amount of $566,599.75.

Louisiana Bag has also requested attorney fees in connection herewith; however, that claim is disallowed. Though attorney fees were available under La.R.S. 22:658 prior to August 15, 2003, this court's determination that Audubon had received satisfactory proof of loss and that it was deemed arbitrary and capricious by the end of August of 2003, triggers La.R.S. 22:658 subsequent to the August 15, 2003 effective date of the amendment. Louisiana Revised Statutes 22:658 subsequent to August 15, 2003 did not allow attorney fees. Consequently, the claim of Louisiana Bag for attorney fees is denied.

## DECREE

For the foregoing reasons, the judgment in favor of Audubon Indemnity Company is reversed. Additionally, judgment is rendered herein in favor of

12

Louisiana Bag Company, Inc. and LaPac Manufacturing, Inc. and against Audubon Indemnity Company in the amount of $566,599.75. The claim of Louisiana Bag Company, Inc. and LaPac Manufacturing, Inc. for attorney fees is denied.

Costs of this appeal are assessed against Audubon Indemnity Company.

**REVERSED AND RENDERED.**